Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Tel:  213.236.0600 Fax:  213.236.2700

Attorneys for Defendant CALEB GARCIA ALAMILLA

HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
TY A. FORD, Deputy City Attorney (SBN 218365)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Tel: 213.978.6900 Fax: 213.978.8785
Email: Ty.Ford@lacity.org

Attorneys for Defendant CITY OF LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEXANDRA RASEY-SMITH; GORDON GENE MACCANI; and JANET MACCANI,<br><br>            Plaintiffs,<br><br>      v.<br><br>CITY OF LOS ANGELES; CALEB GARCIA ALAMILLA; and DOES 2-10, inclusive,<br><br>            Defendants. | Case No. 2:24-cv-03265-MWC-SSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*Filed concurrently with Separate Statement of Uncontroverted Facts and Conclusions of Law; Declaration of C. Garcia Alamilla; Declaration of C. Chomuk; and [Proposed] Order*<br><br>Judge:   Hon. Michelle Williams Court<br>Date:    December 26, 2025<br>Time:    1:30 p.m.<br>Crtrm:   6A<br><br>Trial Date:          April 6. 2026 |

///

///

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................ iii

II.  PARTIES AND CLAIMS. ........................................................................ 1

III.  STATEMENT OF FACTS ......................................................................... 1

    A.  Call for Service for Reported Assault with a Deadly Weapon ............... 1

    B.  Maccani Appeared Armed and Charged Towards Officers .................. 3

    C.  Medical Aid was Immediately Called for and Rendered ...................... 6

IV.  LEGAL STANDARD .............................................................................. 6

V.  PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE FAILS BECAUSE THE FORCE USED WAS OBJECTIVELY  REASONABLE ...................... 7

    A.  *Graham* Factor One: Severity of the Crime at Issue .......................... 9

    B.  *Graham* Factor Two: Immediate Threat to Officer Safety .................. 10

    C.  *Graham* Factor Three: Active Resistance or Attempt to Evade .......... 12

    D.  Officer Garcia Had Probable Cause to believe that Maccani Posed a Significant Threat of Death or Serious Physical Injury ......... 12

VI.  PLAINTIFF'S SECTION 1983 CLAIM FOR DENIAL OF MEDICAL CARE FAILS AS A MATTER OF LAW ...................................... 12

VII.  PLAINTIFFS' SECTION 1983 CLAIM FOR DEPRIVATION OF SUBSTANTIVE DUE PROCESS FAILS AS A MATTER OF LAW ......... 14

VIII.  QUALIFIED IMMUNITY BARS PLAINTIFFS' CLAIMS ....................... 16

    A.  Legal Standard for Qualified Immunity ................................................ 16

    B.  Application of Qualified Immunity to Plaintiffs' Federal Claims ........ 17

        1.  Count One: Excessive Force ...................................................... 17

        2.  Count Two: Failure to Summon Medical Care ......................... 18

        3.  Count Three: Substantive Due Process ..................................... 18

IX.  PLAINTIFF'S CLAIM FOR BATTERY SHOULD BE DISMISSED AS THE FORCE USED WAS OBJECTIVELY REASONABLE ............... 19

X.  PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR VIOLATION OF THE BANE ACT CANNOT SURVIVE SUMMARY JUDGMENT ...... 19

XI.  Plaintiff lacks standing to recover individually for battery, negligence,

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4                           i                    Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

or bane act violations..........................................................................................22

XII.    CONCLUSION ..............................................................................................22

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Federal Cases

*A. K. H v. Cty. of Tustin,*
  837 F.3d 1005 (9th Cir. 2016) ................................................................. 9

*Acevedo v. City of Anaheim,*
  No. 8:14-CV-01147-ODW(E), 2016 WL 79786 (C.D. Cal. Jan. 6,
  2016) ...................................................................................................... 13

*Estate of Aguirre v. Cnty. of Riverside,*
  29 F.4th 624 (9th Cir. 2022) .................................................................... 7

*Anderson v. Liberty Lobby,*
  477 U.S. 242 (1986) ................................................................................. 6

*Bernal v. Sacramento Cnty. Sheriff's Dep't,*
  73 F.4th 678 (9th Cir. 2023) .................................................................... 8

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................. 6

*Cruz v. Cty. of Anaheim,*
  765 F.3d 1076 (9th Cir. 2014) ........................................................... 7, 18

*D'Braunstein v. Cal. Highway Patrol,*
  131 F.4th 764 (9th Cir. 2025) ................................................................ 13

*Tennessee v. Garner,*
  471 U.S. 1 (1985) ..................................................................................... 7

*George v. Morris,*
  736 F.3d 829 (9th Cir. 2013) ............................................................. 7, 18

*Graham v. Connor,*
  490 U.S. 386 (1989) ............................................................................. 7, 8

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ............................................................................... 17

*Hyde v. City of Willcox,*
  23 F.4th 863 (9th Cir. 2022) .................................................................... 8

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

iii

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

*Lombardo v. Cty. of St. Louis*,
594 U.S. 464 (2021) ........................................................................ 7

*Mejia v. City of San Bernardino*,
No. EDCV 11-00452 VAP, 2012 WL 1079341 (C.D. Cal. Mar. 30, 2012) ............................................................................................... 13

*Napouk v. L. V. Metro. Police Dep't*,
123 F.4th 906 (9th Cir. 2024) ............................................ 9, 10, 15, 16

*Peck v. Montoya*,
51 F.4th 877 (9th Cir. 2022) ........................................................ 15, 18

*Porter v. Osborn*,
546 F.3d 1131 (9th Cir. 2008) ........................................................... 15

*Reese v. Cnty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) ........................................................... 21

*Rodriguez v. City of Fresno*,
819 F. Supp. 2d 937 (E.D. Cal. 2011) ................................................. 6

*Ryburn v. Huff*,
565 U.S. 469 (2012) ............................................................................ 8

*Sandoval v. Cnty. of Sonoma*,
912 F.3d 509 (9th Cir. 2018) ............................................................. 21

*Saucier v. Katz*,
533 U.S. 194 (2001) .......................................................................... 17

*Screws v. U.S.*,
325 U.S. 91 (1945) ............................................................................ 20

*Estate of Strickland v. Nevada Cnty.*,
69 F.4th 614 (9th Cir. 2023) .......................................................... 9, 11

*Tabares v. Cty. of Huntington Beach*,
988 F.3d 1119 ..................................................................................... 9

*Tatum v. City & County of San Francisco*,
441 F.3d 1090 (9th Cir. 2006) ........................................................... 13

*Thompson v. Hubbard*,
257 F.3d 896 (8th Cir. 2001) .............................................................. 8

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

*Ward v. City of San Jose,*
    967 F.2d 280 (9th Cir. 1991) ................................................................. 15

*District of Columbia v. Wesby,*
    583 U.S. 48 (2018) ................................................................................... 17

*White v. Pauly,*
    580 U.S. 73 (2017) ................................................................................... 17

*Wilkinson v. Torres,*
    610 F.3d 556 (9th Cir. 2010) ................................................................. 15

**State Cases**

*Austin B. v. Escondido Union School Dist.,*
    149 Cal. App. 4th 860 (2007) ................................................................. 20

*Cnty. Inmate Tel. Serv. Cases,*
    48 Cal.App.5th 354 (2020) ..................................................................... 20

*Cornell v. Cty. and Cnty. of San Francisco,*
    17 Cal.App.5th 766 (2017) ..................................................................... 20

*Edson v. Cty. of Anaheim,*
    63 Cal.App.4th 1269 (1998) ................................................................... 19

*Hernandez v. Cty. of Pomona,*
    46 Cal.4th 501 (2009) ............................................................................. 19

*Julian v. Mission Cmty. Hosp.,*
    11 Cal.App.5th 360 (2017) ..................................................................... 20

*Perez v. Cty. of Huntington Park,*
    7 Cal.App.4th 817 (1992) ....................................................................... 22

*Shoyoye v. Cnty. of Los Angeles,*
    203 Cal.App.4th 947 (2012) ................................................................... 20

*Simmons v. Sup. Ct.,*
    7 Cal.App.5th 1113 (2016) ..................................................................... 20

*Venegas v. Cnty. of Los Angeles,*
    32 Cal.4th 820 (2004) ............................................................................. 20

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

v

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

*Zelig v. Cty. of Los Angeles,*
    27 Cal.4th 1112 (2002) .......................................................................... 22

## Federal Statutes

42 U.S.C. § 1983 .................................................................... 12, 13, 14, 19

## State Statutes

Cal. Civil Code § 52.1 (Bane Act) ................................................ *passim*

Cal. Code Civ. Proc.
    § 377.30 ............................................................................................. 22
    § 377.60 ............................................................................................. 22

Cal. Gov. Code
    § 815.2 ............................................................................................... 21
    § 815.2(a) ........................................................................................... 21

## Other Authorities

Fed. R. Civ. P. 56(a) ................................................................................ 6

Fourteenth Amendment ............................................................. 13, 15, 19

Fourth Amendment ..................................................................... *passim*

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

I.    **INTRODUCTION**

This action arises from a rapidly-evolving encounter between the Decedent, Jason Maccani ("Maccani"), and officers from the City of Los Angeles Police Department that required Officer Caleb Garcia Alamilla ("Officer Garcia") to make a split-second decision to use lethal force when the threat posed by Maccani quickly escalated. Despite Officers' continued efforts to obtain compliance and de-escalate, Maccani abruptly charged towards them, wielding what reasonably appeared to be a knife. Confronted with an apparent imminent threat of serious harm, Officer Garcia discharged his weapon, fatally wounding Maccani. Plaintiffs allege federal and state civil rights claims as well as various state tort law claims, which fail for the reasons identified below.

II.    **PARTIES AND CLAIMS.**

Plaintiffs are: (1) Alexandra Rasey-Smith, Maccani's wife and successor in interest; (2) Gordon Gene Maccani, Maccani's father; and (3) Janet Maccani, Maccani's mother. Defendants are the City of Los Angeles and Officer Garcia.

Plaintiffs' First Amended Complaint ("FAC") alleges the following claims: (1) Section 1983–excessive force; (2) Section 1983–denial of medical care; (3) Section 1983–loss of familial association; (4) battery; (5) negligence; and (6) California Civil Code § 52.1 (the Bane Act). Defendants move for judgment on all claims other than negligence, though they challenge Rasey-Smith's standing to bring that claim in her individual capacity.

III.    **STATEMENT OF FACTS**

A.    **Call for Service for Reported Assault with a Deadly Weapon**

On February 3, 2024, at approximately 2:20 p.m., Los Angeles Police Department received a call for service regarding an assault with a deadly weapon in progress at a studio in an industrial complex in the Skid Row area of downtown Los Angeles. (Separate Statement of Undisputed Facts ("SSUF") #1.) The call reported the suspect was an adult white male who was under the influence and armed with a

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

1

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

large stick attacking an employee. (SSUF #2.) Dispatch instructed the officers to respond Code 3–an emergency response requiring immediate action. (SSUF #3.)

Police Officers Garcia and Colin Chomuk responded Code 3. (SSUF #4.) While enroute to the location, dispatch provided additional information–that the suspect was on the fourth floor, guarding the door to the studio and preventing the reporting party from exiting. (SSUF #5.) Reading aloud from the patrol vehicle's CAD system, Officer Chomuk read the description of the suspect as male, white, six-feet-two-inches tall, and armed with stick threatening employees. (SSUF #6.)

Officers Garcia and Chomuk arrived at the location along with four other officers and a Sergeant. (SSUF #7.) As Officers Garcia and Chomuk pulled up to the location, one of the reporting parties met them outside. (SSUF #8.) They followed him into the building where they met with both reporting parties, who explained that a stranger (later identified as Jason Maccani) had opened the unlocked door to their work studio, entered, and began ordering them to leave in an aggressive and erratic manner. (SSUF #9.) They told officers they believed he was under the influence of drugs. (SSUF #10.) They informed the responding officers that they wanted the intruder removed, and signed a private-persons-arrest form authorizing them to arrest the intruder for trespass. (SSUF #11.)

The reporting parties provided responding officers with a description of the area approaching their studio. (SSUF #12.) When asked if there were weapons inside the studio, the reporting parties informed officers that while there were no firearms, the intruder had access to sharp scissors and shears since they were in the textile/fabric industry. (SSUF #13.)

After the reporting parties signed the private-persons-arrest form, Sergeant Punzalan prepared a tactical plan, designating Officer Orozco as the contact officer, Officers Chomuk and Rodriguez as officers with authority to use less-lethal force, and Officers Quintero and Garcia as the arrest team. (SSUF #14.)

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

2

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

The responding Officers ascended the stairs to the fourth floor and positioned themselves approximately 35 feet away from the unit, the door of which was ajar. (SSUF #15.) Officer Rodriguez issued a callout, announcing the presence of the Los Angeles Police Department and issuing verbal commands for the suspect (Maccani) to exit with his hands raised. (SSUF #16.)



[SSUF #17]

**B.    Maccani Appeared Armed and Charged Towards Officers**

Within a few seconds of the callout, Maccani appeared in the doorway of the studio with his hands raised. (SSUF #18.) He appeared disheveled and under the influence of an unknown narcotic. (SSUF #19.) Maccani momentarily complied with the Officers' commands to exit the studio, turn around, and walk backwards towards them with his hands raised. (SSUF #20.) However, after taking a few steps, Maccani dropped his arms, abruptly spun around, and aggressively charged towards the officers. (SSUF #21.) His facial expression was tense and hostile, with his eyes fixed on the officers as he moved quickly towards them. (SSUF #22.)

Officers continued yelling at Maccani to stop, yelling "*Hold on right–Hey! Hold on right there!*" but he continued to advance aggressively towards the Officers.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

3

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

(SSUF #23.) As Maccani charged towards the Officers, Officer Chomuk stepped away from the wall and deployed a 40mm less-lethal foam projectile round from approximately ten feet away, striking Maccani in the right stomach to lower rib area. (SSUF #24.)

As Officer Chomuk fired, Officer Rodriguez simultaneously fired one beanbag round from her Remington 870 shotgun from approximately eight feet away. (SSUF #25.) The beanbag struck Maccani in the abdomen. (SSUF #26.) The 40mm foam projectile and beanbag round are less-lethal force options designed to strike the suspect's body and cause pain without penetrating the body, in order to subdue the individual and enable officers to safely gain control. (SSUF #27.) The Officers' attempts to deescalate and gain compliance using verbal orders and less-lethal force were unsuccessful. (SSUF #28.)

After the 40mm foam projectile and beanbag rounds struck Maccani, he took a fighting stance, clenching both fists and turning his body so that his left side angled towards Officers as he approached them. (SSUF #29.) He drew his left arm tightly across his body in a guarded fighting stance, while his right hand remained clenched around what appeared to be a pointed object, which he held downward in a striking position. (SSUF #30.) Officer Garcia believed the object clenched in Maccani's right fist was a knife. (SSUF #31.)



Maccani's movements and stance were aggressive and combative, protecting his body with his left arm while approaching Officers as if preparing to strike with the other (as depicted in the photograph above, with the red circle around the object Officer Garcia observed in Maccani's hand). (SSUF #32.)

Maccani began yelling and rapidly and purposefully charged towards the Officers. (SSUF #33.) As he closed the distance, Officer Rodriguez deployed a

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

4

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

second less-lethal beanbag round from less than one foot away. (SSUF #34.) The beanbag struck Maccani on his right forearm. (SSUF #35.) This further use of less-lethal force also proved ineffective. (SSUF #36.)

Maccani shrieked and barreled towards the officers. (SSUF #37.) As he advanced, Officer Garcia again observed Maccani gripping what appeared to be a white knife in his right hand. (SSUF #38.) Maccani's eyes were wide and fixed on the Officers with an intense, unbroken stare. (SSUF #39.) In that moment, Officer Garcia believed Maccani was preparing to use the knife against them. (SSUF #40.)

Maccani charged towards Officer Rodriguez, using both of his forearms to push her beanbag shotgun in a downward motion. (SSUF #41.) Officer Rodriguez's head and back struck the wall as Maccani pushed her, pinning her against the wall. (SSUF #42.) Officer Rodriguez immediately pulled the beanbag shotgun away, causing Maccani to collide with his back against the north hallway wall. (SSUF #43.)

Meanwhile, fearing for the safety of Officer Rodriguez, Officer Garcia unholstered his firearm. (SSUF #44.) Sergeant Punzalan then grabbed Maccani's right arm just above the elbow. (SSUF #45.) As Sergeant Punzalan placed his right hand on Maccani's right bicep, Officer Garcia raised his pistol and fired one round from approximately three-to-six feet away toward center mass (chest/torso area). (SSUF #46.) The round struck Maccani in the right upper arm and then his chest. (SSUF #47.) Maccani screamed loudly but remained upright. (SSUF #48.)

Sergeant Punzalan pushed Maccani to the wall; he and Officer Garcia thereafter took Maccani to the ground and handcuffed him without further incident. (SSUF #49.) As they were handcuffing Maccani, Officer Garcia verbally confirmed to the other Officers that he had fired a lethal-force round that struck Maccani. (SSUF #50.) The lethal shot was fired at roughly 14:28:48 in the body-worn-camera footage. (SSUF #51.)

///

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

5

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1

**C.**     **Medical Aid was Immediately Called for and Rendered**

2     Officers quickly rolled Maccani into a recovery position (on his side) and

3 radioed dispatch to send an ambulance. (SSUF #52.) Officer Garcia heard one of his

4 fellow officers call for the rescue ambulance at roughly 14:29:57, just over a minute

5 after the lethal shot was fired. (SSUF #53.) Officer Garcia noticed Maccani had a

6 chest wound after he was rolled into the recovery position and applied pressure to

7 prevent him from bleeding out. (SSUF #54.)

8     Officer Orozco checked for a pulse on Maccani's neck. (SSUF #55.) He

9 ordered that chest compressions be initiated, so Officer Garcia rolled Maccani onto

10 his back, and performed chest compressions until another Officer took over. (SSUF

11 #56.) Los Angeles Fire Department personnel arrived at 14:35 hours and assumed

12 medical care of Maccani, who was later pronounced deceased at the hospital at

13 15:12 hours. (SSUF #57.)

14     After Maccani was transported and the scene was processed, it was

15 discovered that the object he had been clenching in his fist was a plastic fork. (SSUF

16 #58.) Officer Garcia was unaware of this fact until after the shooting. (SSUF #59.)

17 **IV.**     **LEGAL STANDARD**

18     Summary judgment is appropriate where "there is no genuine issue as to any

19 material fact and the moving party is entitled to a judgment as a matter of

20 law." Fed. R. Civ. P. 56(a). The moving party discharges its initial burden by

21 showing "that there is an absence of evidence to support the nonmoving party's

22 case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Thereafter, the

23 burden shifts to the nonmoving party to designate specific facts showing there is

24 a **genuine** issue for trial on those claims for which the opposing party will bear the

25 burden of proof at trial. *Id.* at 324. "If the evidence is merely colorable, or

26 is not significantly probative, summary judgment may be granted." *Anderson v.*

27 *Liberty Lobby*, 477 U.S. 242, 249–250 (1986); *Rodriguez v. City of Fresno*, 819 F.

28 Supp. 2d 937, 944 (E.D. Cal. 2011) ("[T]o establish the existence of this factual

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4                6                Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1   dispute, the opposing party may not rely upon the mere allegations or denials of its

2   pleadings, but is required to tender evidence of specific facts in the form of

3   affidavits, and/or admissible discovery material, in support of its contention that the

4   dispute exists.").

5   **V.    PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE FAILS BECAUSE**

6   **THE FORCE USED WAS OBJECTIVELY  REASONABLE**

7        Plaintiff alleges Officer Garcia violated Maccani's civil rights by using

8   unreasonable force. (ECF No. 39, First Amended Complaint ("FAC") at ¶¶ 24–32.)

9   Plaintiff's claim, however, must fail as the force used by Officer Garcia was

10  objectively reasonable under the totality of these circumstances.

11       All claims of excessive force–whether involving deadly or non-deadly force–

12  are analyzed under the objective reasonableness standard of the Fourth Amendment.

13  *See Lombardo v. Cty. of St. Louis*, 594 U.S. 464, 466 (2021); *Graham v. Connor*,

14  490 U.S. 386, 397 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985). Under this

15  standard, courts balance the degree of force used against the government's

16  countervailing need for that force under the circumstances. *See Estate of Aguirre v.*

17  *Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022).

18       The test of reasonableness in this context is highly deferential to the police

19  officer's need to protect himself and others. In fact, an officer is ***not*** constitutionally

20  required to wait until a weapon is in plain view before employing deadly force to

21  protect himself or others. *See Cruz v. Cty. of Anaheim*, 765 F.3d 1076, 1078 (9th

22  Cir. 2014); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013), *cert. denied,* 134 S.

23  Ct. 2695 (2014) [observing that "if the person is armed—or reasonably suspected of

24  being armed—a furtive movement, harrowing gesture, or serious verbal threat might

25  create an immediate threat" sufficient to warrant the use of deadly force]. A contrary

26  rule would place not only the lives of law enforcement in danger, but would also

27

28

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

7

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

endanger public safety.[1] *See Ryburn v. Huff,* 565 U.S. 469, 477 (2012) [warning judges to "be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation"]. Finally, a suspect who repeatedly refuses to comply with instructions escalates the risk involved for officers who are unable to predict what type of noncompliance might come next. *See id*.

The Supreme Court has long recognized that when evaluating force, courts must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The inquiry is dynamic; "the reasonableness of force may change as the circumstances evolve." *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022).

To assess the government's interest in the use of force, courts consider three non-exclusive factors set forth by the Supreme Court in *Graham. See Williamson*, 23 F.4th at 1153. The three *Graham* factors are: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396.

The Ninth Circuit has repeatedly emphasized that the second factor–the immediacy of the threat to the safety of the officers or others–is "the most important *Graham* factor." *Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 692 (9th

---

[1] Significantly, orders granting summary judgment in shooting cases have been repeatedly affirmed, **even where it was ultimately determined that the suspect was unarmed.** *See Thompson v. Hubbard*, 257 F.3d 896, 898 (8th Cir. 2001) [affirming summary judgment where officers shot unarmed suspect after he climbed fence and moved arms as if reaching for weapon].

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

8

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

Cir. 2023). For example, in *Estate of Strickland v. Nevada Cnty.,* 69 F.4th 614, 621–22 (9th Cir. 2023), the court held that the immediacy of the threat posed by an individual pointing a replica firearm at officers outweighed the other *Graham* factors that might have otherwise favored the decedent. When faced with a threat, officers "need not avail themselves of the least intrusive means of responding to an exigent situation." *Napouk v. L. V. Metro. Police Dep't*, 123 F.4th 906, 919 (9th Cir. 2024).

When deadly force is used, the inquiry focuses on whether the officer had probable cause to believe that the individual posed a significant threat of death or serious physical injury to the officer or others. *See Tabares v. Cty. of Huntington Beach*, 988 F.3d 1119, 1126. How quickly an officer resorts to deadly force is also relevant. *See A. K. H v. Cty. of Tustin*, 837 F.3d 1005, 1012 (9th Cir. 2016).

### A.    *Graham* Factor One: Severity of the Crime at Issue

Although the severity of the underlying offense is not the most critical consideration when lethal force is used, it provides important context for evaluating the officers' response. Here, Officers were dispatched in response to a report of an assault with a deadly weapon in progress on Skid Row. The caller reported that an individual was acting erratically, appeared to be under the influence, and had entered their studio where he threatened to attack a civilian with a large stick. On scene, the reporting parties advised Officers that the suspect had access to scissors and shears. Officers faced a suspect who was reportedly aggressive, violent, unpredictable, and potentially armed, creating an immediate concern for public safety. They approached cautiously, issued verbal commands, and attempted to deescalate. When Maccani failed to comply and escalated the situation by charging at the officers, they responded by using less-lethal options, deploying a 40mm foam projectile and beanbag rounds in a continued effort to control him without inflicting serious injury. The seriousness of the reported offense heightened the governmental interest in protecting public and officer safety, while the officers' progressive tactics

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

9

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

reflect their restraint and adherence to use-of-force standards.

## B.    *Graham* Factor Two: Immediate Threat to Officer Safety

The second *Graham* factor–the immediacy of the threat–is the most important consideration in evaluating the reasonableness of force. *See Napouk,* 123 F.4th at 915. Here, the threat posed by Maccani was clear, imminent, and escalating. The following is a synopsis of the events leading up to the shooting, as captured on the responding Officers' body-warn camera footage, with references to relevant timestamps for context:

14:28:26    Verbal callout to Maccani to exit with his hands raised

14:28:34    Maccani appears in the doorway and raises his hands

14:28:36    Ordered to turn around and face away from officers; he complies

14:28:37    Ordered to walk backwards towards officers; he complies

14:28:41    Ordered to stop moving

14:28:42    Maccani drops his arms, suddenly spins around, and aggressively charges towards officers, who are shouting at him to stop

14:28:44    Simultaneous discharge of 40mm foam projectile and one beanbag round which both strike Maccani's torso

14:28:45    Maccani balls up his fists with pointed object projecting from his right fist; rushes towards officers

14:28:46    Second beanbag round discharged, striking his right arm

14:28:47    Maccani shrieks and rushes towards officers; makes contact with Officer Rodriguez's beanbag shotgun and pushes her into the wall; engages in physical struggle with Sgt. Punzalan

14:28:48    Lethal shot fired

14:29:57    Rescue ambulance summoned

(SSUF # 60–62.)

When Maccani closed the distance and engaged in a physical struggle with Officer Rodriguez and Sergeant Punzalan while armed with the perceived weapon in

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

10

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

his clenched fist, and having already exhausted multiple less-lethal measures, Officer Garcia reasonably believed that he had to use lethal force to protect his fellow officers from imminent serious harm. The rapid progression from verbal commands to less-lethal force to close-quarters struggle underscores the split-second nature of the decision and the objective reasonableness of Officer Garcia's response under the circumstances.

The fact that Maccani threatened officers with the end of a plastic fork, rather than a knife, does not render Officer Garcia's perception unreasonable. Given Maccani's actions, a reasonable officer would conclude that he had a weapon and intended to imminently use it to cause serious bodily harm. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of an immediate threat, and in those situations courts will not hold that they have violated the Constitution." *Est. of Strickland,* 69 F.4th at 621 (quotation marks and citations omitted) [holding that officers' perception that a plastic, airsoft replica gun was a real firearm was not unreasonable]. "When an officer's use of force is based on a mistake of fact, we ask whether a reasonable officer would have or *should* have accurately perceived that fact." *Id.* (quotation marks and citations omitted).

Here, it was objectively reasonable for Officer Garcia to perceive the object in Maccani's hand as a knife. Maccani held it not as one would hold a fork but held it extended from a clenched fist, in the manner one would wield a stabbing weapon. Responding Officers had been advised by reporting parties that he had threatened a civilian with a stick, was acting erratically, and had access to sharp objects, heightening concern that he was armed. In a rapidly evolving encounter that unfolded within seconds, it is understandable and reasonable that Officers were not fixated on identifying the precise object in his clenched fist but were forced to make split-second decisions amid a tense and uncertain situation. Officer Garcia's perception that Maccani was wielding a knife was entirely reasonable based on the way he concealed the object in his hand and, more importantly, the aggressive

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

11

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

manner in which he charged at the Officers and attacked Officer Rodriguez.  No reasonable person would defiantly charge at a group of armed police officers when he was wielding a plastic fork unless he intended to cause them imminent harm, or at least wanted them to believe he would.  Under these circumstances, the item clenched in Maccani's fist looked like a knife, and no rational jury could find Officer Garcia's conduct objectively unreasonable.

### C.    *Graham* Factor Three: Active Resistance or Attempt to Evade

The third *Graham* factor also weighs heavily in favor of the reasonableness of force used by Officer Garcia. From the moment officers arrived, Maccani ignored repeated verbal commands to comply. Instead, he moved aggressively toward the Officers, closing the distance and engaging Officers in a physical struggle despite their clear instructions to stop, and the impact of multiple less-lethal rounds. Accordingly, Officer Garcia's use of force was objectively reasonable,

### D.    Officer Garcia Had Probable Cause to believe that Maccani Posed a Significant Threat of Death or Serious Physical Injury

When the use of deadly force is at issue, the controlling inquiry is whether the officer had probable cause to believe that the individual posed a significant threat of death or serious physical injury to the officer or others. At the moment of discharge, that standard was clearly met. By that point, Maccani had already ignored repeated commands, advanced aggressively toward officers while holding the pointed object in his clenched fist, and withstood three less-lethal deployments. He then closed the distance and engaged in a physical struggle with Officer Rodriguez and Sergeant Punzalan while still armed with what appeared to be a knife. Officer Garcia's use of lethal force was therefore an objectively reasonable response to protect his fellow officers.

## VI.    PLAINTIFF'S SECTION 1983 CLAIM FOR DENIAL OF MEDICAL CARE FAILS AS A MATTER OF LAW

Plaintiff's second cause of action claims that after deploying lethal force,

Burke, Williams &
Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4                12                Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  Defendant Garcia failed to timely summon medical care. (FAC at ¶ 37.) Based on

2  the undisputed facts and applicable legal standards, this claim must fail.

3      The deprivation of necessary medical care may give rise to a violation of the

4  Fourth Amendment. *See D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 769

5  (9th Cir. 2025) (citing *Tatum v. City & County of San Francisco*, 441 F.3d 1090,

6  1098-99 (9th Cir. 2006)). The Ninth Circuit has made it clear that "officers must

7  seek to provide an injured detainee or arrestee with objectively reasonable medical

8  care in the face of medical necessity creating a substantial and obvious risk of

9  serious harm, including by summoning medical assistance." *Id.* at 771. In evaluating

10 whether a reasonable jury could find a constitutional violation, the court explained

11 that "the common underlying constitutional question reflected in Fourth and

12 Fourteenth Amendment case law is whether an officer's provision (or deprivation)

13 of medical care was objectively unreasonable." *Id.* at 769.

14     Although the Ninth Circuit has not prescribed the contours of objectively

15 reasonable post-arrest care, it has made clear that a police officer who promptly

16 requests an ambulance for an arrestee acts in an objectively reasonable manner. *See*

17 *id.; Tatum*, 441 F.3d at 1099.

18     Significantly, the Central District of California has consistently granted

19 summary judgment in favor of defendant officers on Section 1983 denial of medical

20 care claims under the Fourth Amendment standard where the officers quickly

21 summoned medical care for a plaintiff injured during apprehension. *See, e.g.,*

22 *Acevedo v. City of Anaheim*, No. 8:14-CV-01147-ODW(E), 2016 WL 79786, at *5

23 (C.D. Cal. Jan. 6, 2016) [holding the officers acted "reasonably for purposes of the

24 Fourth Amendment" because they "reported the officer-involved shooting over their

25 radios and called for the paramedics"; thus, the court granted summary judgment as

26 to the plaintiff's denial of medical care claim]; *Mejia v. City of San Bernardino*, No.

27 EDCV 11-00452 VAP, 2012 WL 1079341, at *1 n. 12 (C.D. Cal. Mar. 30, 2012)

28 [granting summary judgment, finding "the uncontroverted evidence indicates that

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

13

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1 immediately after securing Decedent, Officers called for medical assistance on their

2 radios, and moved Decedent into an area where he could receive medical aid"].

3   Here, the uncontroverted evidence shows that immediately after securing

4 Maccani, Officers promptly called for medical assistance and rendered aid

5 themselves. (SSUF # 53.) During the melee between Maccani and the responding

6 Officers, the lethal shot was fired at roughly 14:28:48, after which Maccani was

7 taken to the ground and handcuffed. (SSUF # 45, 49–51.) As they were handcuffing

8 Maccani, Officer Garcia confirmed to the other officers that he fired a lethal round

9 that struck Maccani in the right arm. (SSUF # 50.) Responding Officers quickly

10 rolled Maccani into a recovery position and radioed dispatch to send an ambulance

11 at 14:29:57. (SSUF # 52–53.) Officer Garcia noticed Maccani had a chest wound

12 and applied pressure to prevent him from bleeding out. (SSUF # 54.) Officer Garcia

13 initiated chest compressions, which he and another officer continued until Los

14 Angeles Fire Department arrived at 14:35 hours and assumed medical care of

15 Maccani. (SSUF # 56–57.)

16   Under these circumstances, no reasonable jury could find that Officer

17 Garcia's conduct was objectively unreasonable. Although Plaintiff alleges that he

18 failed to summon medical aid quickly enough, the undisputed evidence shows that

19 assistance was requested within approximately **70 seconds** of the shooting. Further,

20 medical aid was rendered quickly. Officer Garcia applied pressure to the chest

21 wound (SSUF #54) and began CPR at 14:30:55. (SSUF # 55.) The EMTs arrived

22 only minutes later, at 14:35, and took over Maccani's medical aid. (SSUF # 57.)

23 Such a brief interval, occurring amid a rapidly unfolding scene, does not constitute

24 objectively unreasonable conduct and this claim must be dismissed.

25 **VII.**  **PLAINTIFFS' SECTION 1983 CLAIM FOR DEPRIVATION OF**

26    **SUBSTANTIVE DUE PROCESS FAILS AS A MATTER OF LAW**

27   Plaintiffs' third cause of action alleges the deprivation of their substantive due

28 process rights arising from interference with their respective familial relationships

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

14

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

with Maccani. (FAC at ¶¶ 41–53.) However, the conduct involved does not "shock the conscience" given the circumstances and this claim must be dismissed.

The Ninth Circuit recognizes that the parents of an adult decedent have standing to assert a substantive due process claim for the deprivation of the companionship of their child. *See Napouk,* 123 F.4th at 923 (citing *Sinclair v. Cty. of Seattle*, 61 F.4th 674, 678–79 (9th Cir. 2023). However, the Ninth Circuit has **not** extended that right to a spousal relationship. *See Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) [declining to decide the issue and observing that courts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."] (quoting *Washington v. Glucksberg,* 521 U.S. 702, 720.) While the Fourteenth Amendment clearly protects the parent-child relationship, it does not necessarily encompass other familial relationships. *See Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991) [declining to extend due process protection to siblings]. The claim asserted by the Decedent's wife must therefore be dismissed.

Even with standing, all Plaintiffs' claim must be dismissed. "Only '[o]fficial conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process.'" *Napouk*, 123 F.4th at 923 (citations omitted). The applicable standard as to what conduct is sufficient to "shock the conscience" depends on the circumstances confronting the officer. When there is time for actual deliberation, a showing of deliberate indifference may satisfy the "shocks the conscience" test. *See Wilkinson v. Torres*, 610 F.3d 556, 554 (9th Cir. 2010). However, where—as here—"a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Napouk,* 123 F.4th at 923 (citing *Wilkinson*, 610 F.3d at 554); *see also Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) [applying the second standard to a "five-minute altercation" between the suspect and the officer

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

15

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  that was "quickly evolving and escalating, prompting repeated split-second

2  decisions"] (internal quotations omitted)).

3         In *Napouk*, officers responded to reports of a man walking through a

4  neighborhood at night with what appeared to be a bladed weapon. *See id.* at 912.

5  Upon encountering the suspect and issuing commands, the suspect refused to

6  comply and advanced towards the officers while holding the object. *See id.* at 913–

7  14. When he came within nine feet, both officers fired, fatally wounding him. *See*

8  *id.* at 914. After the shooting, it was discovered that the object was a plastic toy

9  fashioned to resemble a blade. *See id.* In addition to affirming the dismissal of the

10 excessive force claim as objectively reasonable, the court also held that the officers

11 did not violate the decedent's parents' substantive due process rights. "Here,

12 assuming Plaintiffs could assert a substantive due process claim based on the death

13 of their forty-four-year-old son, and that they could succeed in making out an

14 excessive force claim, there is no evidence that the officers acted with anything

15 other than the legitimate law enforcement objectives of self-defense and defense of

16 each other." *Id.* at 923.

17        The facts here are exceedingly analogous to those in *Napouk*. In both cases,

18 despite officers' repeated de-escalation efforts and clear commands, the suspect

19 continued to advance while holding what reasonably appeared to be a weapon,

20 prompting the officers to use lethal force. As in *Napouk*, there is no evidence under

21 these circumstances—and no reasonable jury could find—that Officer Garcia acted

22 with anything other than legitimate law-enforcement objectives to defend others.

23 Accordingly, this claim must be dismissed.

24 **VIII.  <u>QUALIFIED IMMUNITY BARS PLAINTIFFS' CLAIMS</u>**

25        **A.    <u>Legal Standard for Qualified Immunity</u>**

26        Even assuming that Plaintiff could show a constitutional violation, Officer

27 Garcia is entitled to qualified immunity because any mistakes of fact or law he may

28 have made were reasonable, and his actions did not violate clearly established law.

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4                          16                  Case No. 2:24-cv-03265-MWC-SSC
                                                              DEFENDANTS' MPAS ISO MOTION FOR
                                                              PARTIAL SUMMARY JUDGMENT

1   *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity absolutely
2   shields government officials from liability for civil damages as long as their conduct
3   "does not violate clearly established statutory or constitutional rights of which a
4   reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 808
5   (1982).

6       Qualified immunity protects government officials from civil liability unless
7   "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness
8   of their conduct was 'clearly established at the time.'" *District of Columbia v.
9   Wesby*, 583 U.S. 48, 62–63 (2018) (citation omitted). Even if the Court finds that the
10  officer's conduct violated a constitutional right and that the right was "clearly
11  established" at the time, the inquiry doesn't necessarily end there. The Court must
12  still ask whether, in light of the specific facts and circumstances, a reasonable
13  officer in the defendant's position could have believed his conduct was lawful. *See
14  Saucier*, 533 U.S. at 202.

15      **B.    Application of Qualified Immunity to Plaintiffs' Federal Claims**
16          **1.    Count One: Excessive Force**

17      For the reasons set forth above, Officer Garcia's conduct did not violate the
18  Fourth Amendment, but even if it did, he would still be entitled to qualified
19  immunity because he did not violate clearly established law. Recent U.S. Supreme
20  Court precedent has clarified that, as to claims arising solely under federal law, a
21  police officer is entitled to qualified immunity where, at the time of the use of force,
22  there was no prior precedent with facts specifically and substantially identical to the
23  facts of the incident at issue that would have put that officer on notice that his
24  conduct was unconstitutional. *See White v. Pauly*, 580 U.S. 73, 79 (2017). The
25  Supreme Court has repeatedly emphasized this point because qualified immunity is
26  important to society and because the immunity from suit is effectively lost if a case
27  is erroneously permitted to go to trial. *See id*.

28      Here, there is no precedent which establishes that a peace officer violates the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4                    17                    Case No. 2:24-cv-03265-MWC-SSC
                                                           DEFENDANTS' MPAS ISO MOTION FOR
                                                           PARTIAL SUMMARY JUDGMENT

Fourth Amendment in circumstances similar to those confronted by the defendant officer here. On the contrary, it is clearly established law that if the person is armed – or reasonably suspected of being armed – a furtive movement, harrowing gesture, or serious verbal threat can create an immediate threat. *See George*, 736 F.3d at 838; *Cruz v. Cty. of Anaheim*, 765 F.3d at 1077-1078. Thus, existing precedent would not have put Officer Garcia on notice that using deadly force in this case would violate the Fourth Amendment, thereby entitling him to qualified immunity.

### 2.    Count Two: Failure to Summon Medical Care

Here again, the record does not establish a constitutional violation. The undisputed evidence shows that medical aid was requested within approximately 70 seconds of the use of force. Nothing in the record suggests that Officer Garcia ignored an obvious medical emergency or unreasonably delayed assistance. In fact, the opposite is true, as he staunched the wound and performed CPR on Macanni until paramedics arrived. (SSUF # 54 and 56.)

Even assuming that a constitutional violation could be found, Officer Garcia is still entitled to qualified immunity because no clearly established law required an officer personally to summon medical aid within seconds of a shooting. Neither *Tatum* nor any other binding precedent defines the precise timing or manner in which an officer must call for medical assistance under these circumstances. A reasonable officer could therefore have believed that the steps taken—summoning emergency responders, staunching the wound, and beginning chest compressions—were consistent with constitutional requirements.

### 3.    Count Three: Substantive Due Process

For the reasons set forth above, Officer Garcia did not violate Plaintiffs' substantive due process rights because "in such a fast-paced environment, deliberate action within the meaning of our cases was not possible." *Peck*, 51 F.4th at 894. Even assuming that Plaintiffs could show a violation, Officer Garcia is nonetheless entitled to qualified immunity because the asserted right was not clearly established.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

18

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

No binding precedent has clearly established that an officer's conduct during a rapidly evolving, life-threatening encounter could give rise to a Fourteenth Amendment violation under these circumstances.

## IX.    <u>PLAINTIFF'S CLAIM FOR BATTERY SHOULD BE DISMISSED AS THE FORCE USED WAS OBJECTIVELY REASONABLE</u>

A plaintiff alleging a battery claim against a law enforcement officer has the burden of proving the officer used unreasonable force. *See Edson v. Cty. of Anaheim,* 63 Cal.App.4th 1269 (1998). In California, the same reasonableness standard–whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer–that is found in Section 1983 litigation is used in evaluating police officer excessive force claims because California law regards Section 1983 as the federal counterpart to state wrongful death battery actions. *See Hernandez v. Cty. of Pomona*, 46 Cal.4th 501, 518 (2009).

For the same reason Plaintiff's Section 1983 unreasonable force claim fails, Plaintiff's state law battery claim must also fail. Namely, the force used by Officer Garcia was objectively reasonable given Maccani's refusal to comply with commands, and charging aggressively at officers while wielding what looked like a knife. Accordingly, this cause of action must be dismissed as to both Officer Garcia and the City of Los Angeles.

## X.    <u>PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR VIOLATION OF THE BANE ACT CANNOT SURVIVE SUMMARY JUDGMENT</u>

Plaintiff's Bane Act ("Section 52.1") claim is derived from the Fourth Amendment excessive force claim. She contends that Officer Garcia used excessive force, thereby depriving Maccani of the right to be free from unreasonable seizure. (FAC at ¶¶ 65–78.) This claim fails because (1) there was no underlying constitutional violation; and (2) there is no evidence that Officer Garcia acted with the specific intent to violate Maccani's rights.

Section 52.1 "does not extend to all ordinary tort actions because its

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

19

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas v. Cnty. of Los Angeles,* 32 Cal.4th 820, 843 (2004); *Shoyoye v. Cnty. of Los Angeles*, 203 Cal.App.4th 947, 959 (2012).

To prevail, a plaintiff "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." CACI 3066; *Venegas,* 32 Cal.4th at 843; *Cnty. Inmate Tel. Serv. Cases*, 48 Cal.App.5th 354, 370 (2020). "'The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.'" *Simmons v. Sup. Ct.,* 7 Cal.App.5th 1113, 1125 (2016); accord, *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883 (2007). Absent any federal or state constitutional violation, a Bane Act claim cannot stand. *See Venegas*, 32 Cal.4th at 843.

Plaintiff must also prove that the defendant officer acted with the **specific intent** to violate the decedent's civil rights. *See Screws v. U.S.*, 325 U.S. 91 (1945). This standard requires more than general intent or mere excessive force; "[t]he act of interference with a constitutional right must itself be deliberate or spiteful." *Julian v. Mission Cmty. Hosp.*, 11 Cal.App.5th 360, 395 (2017), as modified on denial of reh'g (May 23, 2017). Thus, the plaintiff must show the officer intended not only to use force, but that he knew or intended that the force was unreasonable under the circumstances. *See id.*

The "egregiousness" required under Section 52.1 turns on whether the circumstances indicate a specific intent to deprive the plaintiff of a protected right; ordinary negligence is insufficient. *See Cornell v. Cty. and Cnty. of San Francisco*, 17 Cal.App.5th 766, 801-02 (2017). To prevail on a Bane Act claim premised on excessive use of force, the plaintiff must establish all of the elements of the

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

20

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

excessive force claim *and* prove that the officer had a *specific intent* to violate the person's constitutional right to be free from unreasonable use of force. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1034-44 (9th Cir. 2018). Evidence showing only that the officer's conduct was objectively unreasonable is not enough; the plaintiff must establish that the officer intended "not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Reese*, 888 F.3d at 1045.

Here, Plaintiff cannot prevail on the Bane Act claim because none of Maccani's constitutional rights were violated. There also is no evidence that Officer Garcia acted with the <u>specific intent to violate</u> Maccani's constitutional rights. The inquiry into specific intent focuses on: (1) whether "the right at issue [was] clearly delineated and plainly applicable under the circumstances of the case" and (2) whether the "defendant commit[ed] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right[.]" *Sandoval v. Cnty. of Sonoma,* 912 F.3d 509, 520 (9th Cir. 2018) (citation omitted). If both requirements are met, "specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right." *Id.* (quoting *Cornell*, 17 Cal.App.5th at p. 803). Here, there is no evidence that Officer Garcia specifically intended to deprive Maccani of his constitutional rights. Rather, it is undisputed that Maccani escalated the situation by ignoring the responding Officers' commands and aggressively charging towards them with a pointed object clenched in his fist, engaging in a physical struggle with two Officers. Importantly, Officer Garcia reasonably believed that as Maccani charged towards the Officers with the perceived knife in his fist, it became an immediate defense-of-life situation.

Plaintiff alleges that the City of Los Angeles is variously liable for Officer Garcia's alleged violation of the Bane Act pursuant to California Government Code section 815.2. (FAC at ¶ 75.) Under Section 815.2(a), a public entity employer is

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

21

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  generally liable for the torts of an employee committed within the scope of

2  employment if the employee is liable. Accordingly, an "employer's vicarious

3  liability is based solely on the employee's wrongful act; the employer cannot be

4  liable when the verdict in favor of the employee determines that the employee did

5  no wrong." *Perez v. Cty. of Huntington Park*, 7 Cal.App.4th 817, 820 (1992); *Zelig*

6  *v. Cty. of Los Angeles*, 27 Cal.4th 1112, 1131 (2002) [holding "there is no basis for

7  imposing vicarious liability upon the public entities" where plaintiff failed to

8  establish defendant "public employee engaged within the scope of employment that

9  would render the employee liable to plaintiffs"]. Here, as Plaintiff's Bane Act claim

10  fails against Officer Garcia, Plaintiff's claim against Defendant City based vicarious

11  liability likewise fails. See *Perez*, 7 Cal.App.4th at 820. Accordingly, the Court

12  should enter judgment for Officer Garcia and the City of Los Angeles on Plaintiff's

13  Bane Act claim.

14  **XI.    Plaintiff lacks standing to recover individually for battery, negligence, or**

15      **bane act violations**

16      Plaintiff cannot recover in her individual capacity for battery, negligence, or

17  violation of the Bane Act because she was not the direct victim of the alleged

18  conduct and has not asserted a claim for wrongful death in violation of Cal. Code

19  Civ. Proc. § 377.60. Each of her state law causes of action is personal in nature and

20  must be brought by the person whose rights were violated. *See* Cal. Code Civ. Proc.

21  section 377.30 [successor may pursue only decedent's causes of action]. Because

22  Plaintiff asserts injury solely on behalf of the decedent, she lacks standing to recover

23  individually under any of these theories.

24  **XII.    CONCLUSION**

25      For the foregoing reasons, Defendants respectfully request that the Court

26  grant partial summary judgment in favor of Defendants City of Los Angeles and

27  Officer Garcia and against Plaintiffs.

28

Burke, Williams & Sorensen, LLP
Attorneys at Law
Los Angeles

4926-7165-5287 v4

22

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

Dated:  November 7, 2025   BURKE, WILLIAMS & SORENSEN, LLP


By:      /s/ Susan E. Coleman
         SUSAN E. COLEMAN
         Attorneys for Defendant CALEB GARCIA
         ALAMILLA

Dated:  November 7, 2025   HYDEE FELDSTEIN SOTO, City Attorney
                           DENISE C. MILLS, Chief Deputy City Attorney
                           KATHLEEN KENEALY, Chief Assistant City Attorney


By:      /s/ Ty A. Ford
         TY A. FORD, Deputy City Attorney
         Attorneys for Defendants, CITY OF LOS
         ANGELES

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4

23

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1

**<u>CERTIFICATE OF COMPLIANCE</u>**

The undersigned, counsel of record for Defendant Officer Caleb Garcia Aramilla, certifies that this brief contains 6,977 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

Dated:  November 7, 2025          BURKE, WILLIAMS & SORENSEN, LLP

By:  ____*/s/ Susan E. Coleman*____
Susan E. Coleman
Lauren S. Dossey
Attorneys for Defendant CALEB
GARCIA ALAMILLA

**ELECTRONIC SIGNATURE CERTIFICATION**

I, Susan E. Coleman, hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the electronic filing.

Dated:  November 7, 2025          BURKE, WILLIAMS & SORENSEN, LLP

By:  */s/ Susan E. Coleman*____
Susan E. Coleman
Lauren S. Dossey
Attorneys for Defendant
CALEB GARCIA ALAMILLA

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4926-7165-5287 v4                    24

Case No. 2:24-cv-03265-MWC-SSC
DEFENDANTS' MPAS ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT