Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendant CALEB GARCIA ALAMILLA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ALEXANDRA RASEY-SMITH; GORDON GENE MACCANI; and JANET MACCANI,

Plaintiffs,

v.

CITY OF LOS ANGELES; CALEB GARCIA ALAMILLA; and DOES 2-10, inclusive,

Defendants.

Case No. 2:24-cv-03265-MWC-SSC

**DECLARATION OF CALEB GARCIA ALAMILLA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*Filed concurrently with [Notice of Motion and Motion for Summary Judgment, Memorandum of Points and Authorities in Support Thereof; Declaration of Susan E. Coleman; Separate Statement of Uncontroverted Facts and Conclusions of Law; and Proposed Order]*

Judge: Hon. Michelle Williams Court
Hrg: December 26, 2025
Time: 1:30 p.m.

Trial Date: April 6, 2026

I, CALEB GARCIA ALAMILLA, declare:

1. I have personal knowledge of the facts stated herein, except those stated upon information and belief and, as to those matters, I believe them to be true. If called upon to testify to the matters herein, I could and would competently do so.

2. On February 3, 2024, I was assigned as a Police Officer I in the Los Angeles Police Department. I had graduated from the Police Academy in August

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4938-5544-9972 v4

1

Case No. 2:24-cv-03265-MWC-SSC
GARCIA ALAMILLA DECL.
ISO DEFENDANT'S MSJ

2023, and I was toward the end of my 6-month field training period.

3. At around 2:20 p.m., my Field Training Officer Colin Chomuk and I responded to a call for service regarding an assault with a deadly weapon in progress at a studio in an industrial complex in the Skid Row area of downtown Los Angeles.

4. The dispatch call reported the suspect was an adult male who was under the influence, who was armed with a large stick, and attacking an employee.

5. Dispatch instructed us to respond Code 3–an emergency response requiring the use of lights and sirens and signifying the need for immediate action.

6. While enroute to the location, dispatch radioed us to provide additional information, that the suspect was on the fourth floor in unit 402 guarding the door to the studio, and the reporting party was unable to exit. An additional unit and a supervisor were requested to respond.

7. Reading from the patrol vehicle's CAD system, Officer Chomuk read to me a description of the suspect as male white, six two, red beanie, brown shirt, blue jeans, armed with stick threatening employees.

8. Officer Chomuk and I responded Code 3 to the address provided, 644 Towne Avenue, along with four other police officers and a police sergeant.

9. As we pulled up to the location, one of the reporting parties met us outside and told us the office/studio was actually in the building at 801 East 7th Street. We followed him inside the building and up the stairs to the third floor, where we met with both reporting parties, who explained that a stranger (later identified as Jason Maccani) had opened the unlocked door to their work studio (unit 402), entered the unit, and began ordering them to leave in an aggressive and erratic manner. They believed he was under the influence of drugs.

10. The reporting parties wanted the intruder to be removed from their studio. To provide the police with authority to do so, they signed a private persons arrest form, authorizing us to arrest the intruder for trespass.

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4938-5544-9972 v4

2

Case No. 2:24-cv-03265-MWC-SSC
GARCIA ALAMILLA DECL.
ISO DEFENDANT'S MSJ

11. The reporting parties gave us a verbal description of the layout of the area approaching their studio, which consisted of a long, narrow hallway on the fourth floor with their studio on the far east side. When asked if there were weapons inside the studio, the reporting parties said there were no firearms but there were sharp scissors and shears since they were in the textile/fabric industry.

12. After the reporting parties signed the private person's arrest form, Sergeant Punzalan prepared a tactical plan, designating Officer Orozco as the contact officer, Officers Chomuk and Rodriguez as officers with authority to use less-lethal force, and Officer Quintero and me as the arrest team.

13. Next, we walked up the stairs to the fourth floor and positioned ourselves approximately 35 feet away from the reporting party's unit, the door of which was partially open.

14. Officer Rodriguez called out to the suspect, announcing the presence of the Los Angeles Police Department and issuing verbal commands him to exit with his hands raised.

15. The following photograph accurately depicts our positioning outside the studio immediately prior to Officer Rodriguez's callout:

Officer Jauregui
Officer Alamilla
Sergeant Punzalan
Officer Rodriguez
Officer Chomuk
Officer Orozco
Officer Quintero

[Still image from hallway video surveillance of officers approaching Unit No. 402]

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4938-5544-9972 v4

3

Case No. 2:24-cv-03265-MWC-SSC
GARCIA ALAMILLA DECL.
ISO DEFENDANT'S MSJ

16. Within a few seconds of the callout, the suspect (Maccani) appeared in the doorway of the studio with his hands raised. He appeared disheveled and under the influence of an unknown narcotic.

17. Maccani momentarily complied with our commands to exit the studio, turn around and walk backwards towards us with his hands raised. However, after taking a few steps, Maccani dropped his arms, spun around, and aggressively charged towards us. His facial expression was tense and hostile, with his eyes fixed on us as he moved quickly towards us.

18. We yelled at Maccani to stop, shouting: "Hold on right–Hey! Hold on right there!" But he did not stop his aggressive moves.

19. As Maccani charged towards us, Officer Chomuk stepped away from the wall and deployed a 40mm less-lethal foam projectile round from approximately ten feet away, striking Maccani in the right stomach to lower rib area.

20. Officer Rodriguez simultaneously fired one beanbag round from her Remington 870 shotgun from approximately eight feet away. The beanbag struck Maccani in the abdomen.

21. The 40mm foam projectile and bean-bag rounds are less-lethal force options designed to strike the suspect's body and cause pain without penetrating the body, in order to subdue the individual and enable officers to safely gain control. Our attempts to deescalate and gain compliance from Maccani initially using verbal orders and then using less-lethal force were unsuccessful.

22. After the 40mm foam projectile and beanbag rounds hit his torso, Maccani took a fighting stance, clenching both fists and turning his body so his left side was angled towards us as he approached. He drew his left arm tightly across his torso in a guarded/protective fighting stance, while his right hand remained clenched around what appeared to be a pointed object, which he held downward in a

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4938-5544-9972 v4

4

Case No. 2:24-cv-03265-MWC-SSC
GARCIA ALAMILLA DECL.
ISO DEFENDANT'S MSJ

striking position.  I believed the object was a knife.

23.   Maccani's movements and stance were aggressive and combative – protecting his body with his left arm while approaching officers as if preparing to strike with the other -- as depicted in this photograph, with the red circle around the



object I observed in his hand.

24.   Maccani began yelling and charged towards us. As he closed the distance, Officer Rodriguez deployed a second less-lethal round from less than one foot away. The beanbag struck Maccani on his right forearm. This further use of less-lethal force also proved ineffective.

25.   Maccani shrieked and barreled towards us. As he advanced on the officers, I again observed Maccani gripping what appeared to be a white knife in his right hand. His eyes were wide and fixed on us with an intense, unbroken stare–a look of aggression and determination that conveyed his intent to attack us.  In that moment, I believed Maccani was preparing to use the knife against us.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4938-5544-9972 v4

5

Case No. 2:24-cv-03265-MWC-SSC
GARCIA ALAMILLA DECL.
ISO DEFENDANT'S MSJ

26. Maccani charged towards Officer Rodriguez, using both of his forearms to push her beanbag shotgun in a downward motion. Her head and back struck the wall as Maccani pushed her.

27. Officer Rodriguez immediately pulled the beanbag shotgun away, causing Maccani to collide with his back against the north hallway wall.

28. Meanwhile, fearing for the safety of Officer Rodriguez, I unholstered my gun. Sergeant Punzalan then grabbed Maccani's right arm just above the elbow. As Sergeant Punzalan placed his right hand on Maccani's right bicep, I raised my pistol and fired one round from approximately 3-6 feet away toward his center mass (chest/torso area).

29. The round struck Maccani in the right upper arm and then his chest. Maccani screamed loudly but remained upright.

30. Officer Orozco moved backward and in front of Officer Quintero, who simultaneously backed up while holding his pistol in a two-handed grip at the low-ready.

31. Sergeant Punzalan pushed Maccani to the wall; he and I thereafter took Maccani to the ground and handcuffed him without further incident. As we were handcuffing Maccani, I verbally confirmed to the other officers that I had fired a lethal-force round that struck Maccani in the right arm. The lethal shot was fired at roughly 14:28:48 in the video.

32. Officer Orozco checked for a pulse on Maccani's neck at 14:30:55 hours and intermittently checked his pulse. We quickly rolled Maccani into a recovery position (on his side) and someone radioed dispatch to send an ambulance. I heard the rescue ambulance summoned at 14:29:57, just over a minute after the shot had been fired. I noticed Maccani had a chest wound after he was rolled into the recovery position and I applied pressure to prevent him from bleeding out.

33. After Officer Orozco ordered me to begin chest compressions (which I believe occurred when he no longer felt a pulse), I rolled Maccani onto his back, and

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4938-5544-9972 v4

6

Case No. 2:24-cv-03265-MWC-SSC
GARCIA ALAMILLA DECL.
ISO DEFENDANT'S MSJ

I performed chest compressions until someone else took over. Los Angeles Fire Department personnel arrived at 14:35 hours and assumed medical care of Maccani, who was later pronounced deceased at the hospital at 15:12 hours.

34. After Maccani was transported and the scene was processed, it was discovered that the object he had been clenching in his right fist was a plastic fork. I was unaware of this until after the shooting.

31. Attached hereto as **Exhibit A** is a true and correct copy of the surveillance video footage that fairly and accurately depicts the events that occurred in the fourth floor hallway on February 3, 2024. The video, which was produced as DEF2520, contains no audio component and appears somewhat distorted as it uses a wide-angle lens.

32. Attached hereto as **Exhibit B** is a true and correct copy of the footage from my body worn camera that fairly and accurately depicts the events that occurred in the fourth floor hallway on February 3, 2024, from the viewpoint of the camera affixed to my chest. It was produced as DEF2521.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 5, 2025 at Anaheim, California.

Caleb Garciaalamilla (Nov 5, 2025 19:30:47 PST)

CALEB GARCIA ALAMILLA

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4938-5544-9972 v4

7

Case No. 2:24-cv-03265-MWC-SSC
GARCIA ALAMILLA DECL.
ISO DEFENDANT'S MSJ

# EXHIBIT A LODGED UNDER SEAL

# EXHIBIT B LODGED UNDER SEAL