# EXHIBIT T

```
            UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

                      --oOo--


ALEXANDRA RASEY-SMITH;
GORDON GENE MACCANI; and
JANET MACCANI,

           Plaintiffs,

v.                                 Case No.
                                   2:24-cv-03265-PSG-SSC

CITY OF LOS ANGELES; CALEB
GARCIA ALAMILLA; and DOES
2-10, inclusive,

           Defendants.
_____/



           STENOGRAPHIC REPORTER'S TRANSCRIPT OF

                  REMOTE DEPOSITION OF

                SANDRA JAUREGUI VILLEGAS

                 FRIDAY, NOVEMBER 7, 2025




Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No.  21081
```

1  person reporting seemed scared, and in fear.
2     Q.   Anything else?
3     A.   That's it.
4     Q.   So you didn't hear the 911 call, did you?
5     A.   Not the one -- no, not the initial call.
6     Q.   Do you know who the reporting party was that
7  called?
8     A.   I can't remember his name, no.
9     Q.   It was a male?
10    A.   It was a male.
11    Q.   When you say, "He seemed scared," was that
12 based on what you heard over the police radio?
13    A.   Based on the way -- the comments of the call.
14 And when we initially talked to him, he seemed -- that
15 they were initially scared, based on the suspect's
16 demeanor.
17    Q.   Okay.  So I just want to break this down.
18         Before you got to the scene and before you
19 talked to him, did you have any information that anyone
20 had been physically injured?
21    A.   No.
22    Q.   Did you have any information that anyone had
23 been verbally threatened?
24    A.   I'm trying to remember here.
25         So based on the radio call, the comments of the

```
 1      A.   Yes.
 2      Q.   Who made the assignments?
 3      A.   Our sergeant at that time.
 4      Q.   And who was that?
 5      A.   Sergeant Punzalan.
 6      Q.   Did you understand him to be the supervisor on
 7   scene?
 8      A.   Correct.
 9      Q.   What was your assignment?
10      A.   My assignment was communications, or, if I was
11   able to, hands-on.
12      Q.   Did you have a Taser on you?
13      A.   Correct.
14      Q.   Did you have a firearm on you?
15      A.   I did have a firearm on me; correct.
16      Q.   Are you right-handed or left-handed?
17      A.   Right-handed.
18      Q.   Did you have pepper spray?
19      A.   Yes.
20      Q.   A police baton?
21      A.   Yes.
22      Q.   What was your partner's assignment?
23      A.   Bean bag.
24      Q.   Was there a bean bag shotgun in your vehicle?
25      A.   There was a shot -- there was a bean bag and
```

1  A. Okay. So you keep saying "shotgun," so it's --
2  Q. Oh, I'm sorry.
3  A. So bean bag --
4  Q. Oh. I thought bean bags were fired from a bean
5  bag shotgun?
6  A. Yeah. But when you say "shotgun," we also have
7  a shotgun, which is a completely different weapon.
8     So you mean bean bag; right?
9  Q. Yes. I'll just stick with "bean bags." Thank
10 you for that.
11    Did you have training with respect to the bean
12 bags?
13 A. Correct.
14 Q. When were you trained you could use the bean
15 bags?
16 A. So --
17    MR. FORD: I'm going to object that that's an
18 incomplete hypothetical. Overbroad and vague.
19    But go ahead and answer.
20    THE WITNESS: We are trained to use the bean
21 bag when a suspect exhibits behavior that is aggressive
22 towards the officers.
23 BY MR. GALIPO:
24 Q. Did you finish your answer?
25 A. Yeah. So, yes, so the bean bag -- we're

1    trained to use that bean bag when the officer -- when
2    the suspects are exhibiting aggressive behavior, which
3    -- that can include if they approach or advance towards
4    a -- an officer.
5         Q.   Okay.  How about the 40-millimeter?  Is it
6    similar training?
7         A.   Correct.  Similar.
8         Q.   Those are both considered less lethal?
9         A.   Correct.
10        Q.   Were you trained that the bean bag is
11   pain-compliance?
12        A.   Can you repeat that question?
13        Q.   Sure.  Are you trained that bean bags cause
14   pain?
15        A.   Bean bags, yes, could cause pain.  Correct.
16        Q.   And could cause injury?
17        A.   Very well, correct.
18        Q.   How about the 40-millimeter?  Are you trained
19   that they can cause pain?
20        A.   Yes.
21        Q.   And injury?
22        A.   Yes.
23        Q.   Were you trained on the bean bag as to what
24   distance you should use it from?
25        A.   The bean bag?  Yes.

1            MR. FORD:  It's an incomplete hypothetical.
2            But go ahead and answer.
3            THE WITNESS:  Just merely with knife?
4    Depending on what they're doing with the knife.
5            Are they walking towards us?  Are they taking a
6    step towards us with the knife above their head, in a
7    stabbing motion?  Then, you know -- and depending the
8    distance, as well.  But -- so --
9    BY MR. GALIPO:
10        Q.   It depends?
11        A.   Based on the totality of the circumstances,
12    correct.
13        Q.   Did you ever see Mr. Maccani holding an object
14    above his head?
15        A.   I don't recall that.
16        Q.   Did you ever see him making a stabbing motion?
17        A.   No.
18        Q.   Did you hear any verbal warning that a lethal
19    shot was going to be fired?
20        A.   Did I hear a verbal warning?  No, I did not.
21        Q.   Do you know if Orozco, who was assigned lethal,
22    fired the shot?
23        A.   Did I know at the time?  You're asking if I
24    knew at the time?
25        Q.   Correct.

```
 1  STATE OF CALIFORNIA )
                        ) ss:
 2  COUNTY OF BUTTE     )

 3
              I, KIMBERLY E. D'URSO, do hereby certify:
 4

 5            That the witness named in the foregoing

 6  deposition was present remotely and duly sworn to testify

 7  to the truth in the within-entitled action on the day and

 8  date and at the time and place therein specified;

 9            That the testimony of said witness was reported

10  by me in shorthand and was thereafter transcribed through

11  computer-aided transcription;

12            That the foregoing constitutes a full, true and

13  correct transcript of said deposition and of the

14  proceedings which took place;

15            Further, that if the foregoing pertains to the

16  original transcript of a deposition in a federal case,

17  before completion of the proceedings, review of the

18  transcript [ ] was [ ] was not requested.

19            That I am a certified stenographic reporter and

20  a disinterested person to the said action;

21            IN WITNESS WHEREOF, I have hereunder subscribed

22  my hand this 19th day of November, 2025.

23  _____

24  KIMBERLY D'URSO, CSR NO. 11372, RPR

25
```