1  LAW OFFICES OF DALE K. GALIPO
2  Dale K. Galipo (Bar No. 144074)
   dalekgalipo@yahoo.com
3  Eric Valenzuela (Bar No. 284500)
   evalenzuela@galipolaw.com
4  21800 Burbank Boulevard, Suite 310
5  Woodland Hills, California  91367
   Telephone:   (818) 347-3333
6  Facsimile:    (818) 347-4118
7
8
9  Attorneys for Plaintiffs
10
11              UNITED STATES DISTRICT COURT
12
               CENTRAL DISTRICT OF CALIFORNIA
13
14
15
16  ALEXANDRA RASEY-SMITH;         Case No. 2:24-cv-03265-MWC-SSC
    GORDON GENE MACCANI; and
17  JANET MACCANI,                 **PLAINTIFFS' OBJECTIONS AND
                                   RESONSES TO DEFENDANTS'
18              Plaintiffs,        SEPARATE STATEMENTS OF
                                   UNCONTROVERTED FACTS AND
19          vs.                    PLAINTIFFS' ADDITIONAL
                                   UNCONTROVERTED FACTS**
20
    CITY OF LOS ANGELES; CALEB
21  GARCIA ALAMILLA; and DOES 2-
22  10, inclusive
23
                Defendants.
24
25
26
27
28

1        TO THE HONORABLE COURT, ALL PARTIES, AND THEIR

2  ATTORNEYS OF RECORD:

3        Pursuant to Local Rules 56-1 and 56-2, Plaintiffs respectfully submit their

4  Objections and Responses to Defendants' Separate Statement of Uncontroverted

5  Facts, as well as Plaintiffs' Additional Uncontroverted Facts.

6

7  DATED:  December 26, 2025      LAW OFFICES OF DALE K. GALIPO

8

9        By  /s/ Eric Valenzuela

10        Eric Valenzuela

11        Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFFS' OBJECTIONS AND STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | On February 3, 2024, at approximately 2:20 p.m., Los Angeles Police Department received a call for service regarding an assault with a deadly weapon in progress at a studio in an industrial complex in the Skid Row area of downtown Los Angeles.<br><br>Evidentiary Support:<br>Garcia Decl. ¶¶ 2–3; Chomuk Decl. ¶¶ 2–3 | Objection: Relevance, Defendant Garcia did not hear the 911 call prior to shooting Decedent. Garcia would have received the information regarding the incident from the radio dispatch communications and from the police car onboard computer.<br><br>Exhibit K<br>Garcia Depo. at 22:12 – 23:2<br>Exhibit L<br>Chomuk Depo. at 9:4-13 |
| 2. | The caller reported the suspect was an adult white male who was under the influence and armed with a large stick attacking an employee.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 4 | Objection: Relevance, Defendant Garcia did not hear the 911 call prior to shooting Decedent. Garcia would have received the information regarding the incident from the radio dispatch communications and from the police car onboard computer.<br><br>Exhibit K<br>Garcia Depo. at 22:12 – 23:2<br>Exhibit L<br>Chomuk Depo. at 9:4-13 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 3. | Dispatch instructed the officers to respond Code 3–an emergency response requiring immediate action.<br><br>Evidentiary Support: Garcia Decl. ¶ 5 | Disputed to the extent that the radio dispatch communications to Garcia contained no information that Decedent had physically injured anyone or that Decedent was armed with a gun or a knife.<br><br>Evidence:<br>Exhibit A<br>CAD Printout at 5.<br>Exhibit K<br>Garcia Depo at 24:19-21<br>Exhibit L<br>Chomuk Depo. at 9:22 – 10:2 |
| 4. | Police Officers Garcia and Colin Chomuk responded Code 3.<br><br>Evidentiary Support: Garcia Decl. ¶ 8 | Undisputed. |
| 5. | While enroute to the location, dispatch provided additional information–that the suspect was on the fourth floor, guarding the door to the studio and preventing the reporting party from exiting.<br><br>Evidentiary Support: Garcia Decl. ¶ 6 | Disputed to the extent that the radio dispatch communications to Garcia contained no information that Decedent had physically injured anyone or that Decedent was armed with a gun or a knife.<br><br>Evidence:<br>Exhibit A<br>CAD Printout at 5.<br>Exhibit K<br>Garcia Depo at 24:19-22<br>Exhibit L<br>Chomuk Depo. at 9:22 – 10:2 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 6. | Reading aloud from the patrol vehicle's CAD system, Officer Chomuk read the description of the suspect as male, white, six-feet-two-inches tall, and armed with stick threatening employees.<br><br>Evidentiary Support: Garcia Decl. ¶ 7 | Disputed to the extent that the radio dispatch communications to Garcia contained no information that Decedent had physically injured anyone or that Decedent was armed with a gun or a knife.<br><br>Evidence:<br>Exhibit A<br>CAD Printout at 5.<br>Exhibit K<br>Garcia Depo at 24:19-22<br>Exhibit L<br>Chomuk Depo. at 9:22 – 10:2 |
| 7. | Officers Garcia and Chomuk arrived at the location along with four other officers and a Sergeant.<br><br>Evidentiary Support: Garcia Decl. ¶ 8 | Undisputed. |
| 8. | As Officers Garcia and Chomuk pulled up to the location, one of the reporting parties met them outside.<br><br>Evidentiary Support: Garcia Decl. ¶ 9 | Undisputed. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 9. | They followed him into the building where they met with both reporting parties, who explained that a stranger (later identified as Jason Maccani) had opened the unlocked door to their work studio, entered, and began ordering them to leave in an aggressive and erratic manner.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 9 | Disputed to the extent that the PR also told the police that Decedent said weird stuff like the world is ending and they need to get out of here, that Decedent did not hit anyone, that Decedent was talking nonsense and was very antsy.<br><br>Evidence:<br>Exhibit B<br>Jauregui Body Cam Video at 08:20-10:20<br>Exhibit C<br>Punzalan Body Cam Video at 3:20-6:00 |
| 10. | They told officers they believed he was under the influence of drugs.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 9 | Disputed.  PR did not tell the officers on scene that Decedent was under influence and instead told them that Decedent said weird stuff like the world is ending and that Decedent was talking non-sense, which would have put the involved officers on notice that Decedent was potentially suffering from a mental health episode (especially since the incident occurred in the skid row area).<br><br>Evidence:<br>Exhibit B<br>Jauregui Body Cam Video at 08:20-10:20<br>Exhibit C<br>Punzalan Body Cam Video at 3:20-6:00 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 11. | They informed the responding officers that they wanted the intruder removed, and signed a private-persons-arrest form authorizing them to arrest the intruder for trespass.<br><br>Evidentiary Support: Garcia Decl. ¶ 10 | Disputed that the PR signed a private persons arrest form authorizing them to arrest the intruder which is why a copy of this document is not attached as an exhibit.<br><br>Evidence: Exhibit M Quintero Depo. at 17:7-21 |
| 12. | The reporting parties provided responding officers with a description of the area approaching their studio.<br><br>Evidentiary Support: Garcia Decl. ¶ 11 | Undisputed. |
| 13. | When asked if there were weapons inside the studio, the reporting parties informed officers that while there were no firearms, the intruder had access to sharp scissors and shears since they were in the textile/fabric industry.<br><br>Evidentiary Support: Garcia Decl. ¶ 11 | Disputed to the extent that the reporting parties told the officers that Decedent did not have any weapon on his person.<br><br>Evidence: Exhibit B Jauregui Body Cam Video at 08:20-10:20 Exhibit C Punzalan Body Cam Video at 3:20-6:00 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
| --- | --- | --- |
| 14. | After the reporting parties signed the private-persons-arrest form, Sergeant Punzalan prepared a tactical plan, designating Officer Orozco as the contact officer, Officers Chomuk and Rodriguez as officers with authority to use less-lethal force, and Officers Quintero and Garcia as the arrest team.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 12 | Disputed that the PR signed a private persons arrest form authorizing them to arrest the intruder. Further disputed to the extent that Orozco was designated as lethal cover.<br><br>Evidence:<br>Exhibit M<br>Quintero Depo. at 17:7-21<br>Exhibit D,<br>Orozco Interview at 10:19 – 11:3. |
| 15. | The responding Officers ascended the stairs to the fourth floor and positioned themselves approximately 35 feet away from the unit, the door of which was ajar.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 13 | Undisputed. |
| 16. | Officer Rodriguez issued a callout, announcing the presence of the Los Angeles Police Department and issuing verbal commands for the suspect (Maccani) to exit with his hands raised.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 14 | Disputed to the extent Decedent was also told to turn around facing away from the officers and walk backwards to the sound of the officer's voice.<br><br>Evidence:<br>Exhibit E<br>Sync'd Video |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 17. | The photograph accurately depicts the responding officers' positioning outside the studio immediately prior to Officer Rodriguez's callout.<br><br>Evidentiary Support: Garcia Decl. ¶ 15 | Undisputed. |
| 18. | Within a few seconds of the callout, Maccani appeared in the doorway of the studio with his hands raised.<br><br>Evidentiary Support: Garcia Decl. ¶ 16 | Undisputed. |
| 19. | He appeared disheveled and under the influence of an unknown narcotic.<br><br>Evidentiary Support: Garcia Decl. ¶ 16 | Disputed to the extent that Decedent was not under the influence of any narcotics as indicated in the toxicology test performed at autopsy.  Further disputed to the extent that the officers had evidence that Decedent may be mentally ill, including based on his appearance, Defendant Garcia thought Decedent was probably going through some mental illness due to being on skid row and that is a common occurrence that he deals with quite often. Garcia also described Decedent's initial conduct as being very bizarre.<br><br>Evidence:<br>Exhibit F<br>Toxicology Report |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Exhibit H<br>Defendant Garcia Int. at 7:20 – 9:14, 17:6-9, 63:9 – 64:5.<br>Exhibit I<br>Punzalan Int. at 7:22-25, 13:3-22<br>Exhibit K<br>Garcia Depo. at 70:7-20<br>Exhibit B<br>Jauregui Body Cam Video at 08:20-10:20<br>Exhibit C<br>Punzalan Body Cam Video at 3:20-6:00 |
| 20. | Maccani momentarily complied with the Officers' commands to exit the studio, turn around, and walk backwards towards them with his hands raised.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 17 | Undisputed. |
| 21. | However, after taking a few steps, Maccani dropped his arms, abruptly spun around, and aggressively charged towards the officers.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 17 | Disputed to the extent that Decedent slowly walked towards the officers as opposed to aggressively charged towards them.<br><br>Evidence:<br>Exhibit D<br>Officer Orozco Int. at 21:1-6<br>Exhibit J<br>Jauregui Int. at 11:11-13 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 22. | His facial expression was tense and hostile, with his eyes fixed on the officers as he moved quickly towards them.<br><br>Evidentiary Support: Garcia Decl. ¶ 17 | Objection. Calls for speculation and lacks foundation that his facial expression was tense and that his eyes were fixed on the officers. Disputed to the extent that Decedent slowly walked towards the officers<br><br>Evidence: Exhibit D Officer Orozco Int. at 21:1-6 Exhibit J Jauregui Int. at 11:11-13 |
| 23. | Officers continued yelling at Maccani to stop, yelling "*Hold on right–Hey! Hold on right there!*" but he continued to advance aggressively towards the Officers.<br><br>Evidentiary Support: Garcia Decl. ¶ 18 | Disputed to the extent that the officers did not continue to give commands as Decedent advanced towards the officers.<br><br>Evidence: Exhibit E Sync'd Video Exhibit N Punzalan Depo. at 30:21-23 |
| 24. | As Maccani charged towards the Officers, Officer Chomuk stepped away from the wall and deployed a 40mm less-lethal foam projectile round from approximately ten feet away, striking Maccani in the right stomach to lower rib area.<br><br>Evidentiary Support: Garcia Decl. ¶ 19 | Disputed to the extent that Decedent slowly walked towards the officers.<br><br>Evidence: Exhibit D Officer Orozco Int. at 21:1-6 Exhibit J Jauregui Int. at 11:11-13 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 25. | As Officer Chomuk fired, Officer Rodriguez simultaneously fired one beanbag round from her Remington 870 shotgun from approximately eight feet away.<br><br>Evidentiary Support: Garcia Decl. ¶ 20 | Undisputed |
| 26. | The beanbag struck Maccani in the abdomen.<br><br>Evidentiary Support: Garcia Decl. ¶ 20 | Undisputed |
| 27. | The 40mm foam projectile and beanbag round are less-lethal force options designed to strike the suspect's body and cause pain without penetrating the body, in order to subdue the individual and enable officers to safely gain control.<br><br>Evidentiary Support: Garcia Decl. ¶ 21 | Undisputed. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 28. | The Officers' attempts to deescalate and gain compliance using verbal orders and less-lethal force were unsuccessful.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 21 | Disputed that less-lethal force was unsuccessful. Officer Rodriguez, who fired the beanbag rounds, felt they were effective and may have assisted the officers to take Decedent into custody. Further, Sgt. Punzalan was able to go hands on with Decedent immediately after and a result of the second beanbag round being fired and striking and distracting the Decedent which allowed Punzalan the opportunity to physically grab Decedent bear-hug him while his back was facing Sgt. Punzalan. Punzalan did this to avoid the need for additional force, including lethal force.<br>Therefore, it was unnecessary to shoot Decedent while Punzalan was going hands-on with the Decedent. Further, Garcia fired approximately within a second of the second beanbag round being fired so he did not allow for sufficient time to see if the second beanbag round was effective.<br><br>Evidence:<br>Exhibit M<br>Quintero Depo. at 42:10 – 45:12, 54:12-15<br>Exhibit L<br>Chomuk Depo. at 33:18 – 36:8<br>Exhibit N<br>Punzalan Depo. at 24:3-15, 31:6-11 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
|  |  | Exhibit E<br>Sync'd Video<br>Exhibit R<br>Rodriguez Int. at 25:3-24, 28:2-5 |
| 29. | After the 40mm foam projectile and beanbag rounds struck Maccani, he took a fighting stance, clenching both fists and turning his body so that his left side angled towards Officers as he approached them.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 22 | Disputed.  Decedent did not take a fighting stance and instead appears to be trying to use his arms to shield the less-lethal projectiles, which are being fired from a close range only a few feet away, from continuing to strike him in the torso/abdomen and appears to walk facing towards the officers without angling the left side of his body.<br><br>Evidence:<br>Exhibit E<br>Sync'd Video |
| 30. | He drew his left arm tightly across his body in a guarded fighting stance, while his right hand remained clenched around what appeared to be a pointed object, which he held downward in a striking position.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 22 | Disputed.  Decedent did not take a fighting stance and instead appears to be trying to use his arms to shield the less-lethal projectiles, which are being fired from a close range only a few feet away, from continuing to strike him in the torso/abdomen.  Further disputed that the object appeared to be a pointy object.  The object Decedent was holding was a white plastic fork, with the handle protruding a few inches from the bottom of his hand, which does not have any point to it and does not look like a pointed weapon. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Further, it is disputed that Garcia or any officer, ever saw what was believed to be a pointy object since no one ever yelled "drop it" or "he has a weapon" or words to that effect, as officers are trained to do if a suspect is holding a sharp or pointy weapon so as to notify his fellow officers and to allow the suspect an opportunity to discard any weapon.  Especially since Garcia claims to have seen the object for 3-4 seconds continuously. Even Garcia admits having difficulty determining whether the object was pointed or not and does not remember there being a point at the end of the object or seeing the color of steel or metal. Some of the officers never saw a knife, or anything that looked like a knife on Decedent and the white fork does not resemble a knife. Police officers, such as Garcia, are trained on identifying and distinguishing objects and items in people's hands and whether they are weapons or not. <br><br> Evidence: <br> Exhibit E <br> Sync'd Video <br> Exhibit O <br> Photo of Fork <br> Exhibit P <br> Noble Declaration at ¶ 20 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Exhibit K<br>Garcia Depo. at 16:12-15, 20:2 – 21:14, 39:18 – 41:9, 45:15-19, 51:4 – 52:22, 60:3-17, 66:22 – 67:12, 72:15-22, 78:7-16<br>Exhibit M<br>Quintero Depo. at 47:4 – 48:6, 57:14-17<br>Exhibit L<br>Chomuk Depo. at 37:18 – 38:16, 40:2-4<br>Exhibit N<br>Punzalan Depo. at 25:11-17, 39:5-7<br>Exhibit Q<br>Quintero Int. at 29:10-17, 30:11-14, 37:5-8<br>Exhibit U<br>Chomuk Body Cam Video at 9:00 – 9:30<br>See also Defendants' Uncontroverted Facts No. 32 |
| 31. | Officer Garcia Alamilla believed the object clenched in Maccani's right fist was a knife.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 22 | Objection.  Garcia's beliefs are not facts. Disputed that Garcia believed the object was a knife and it would an unreasonable mistake for Garcia to believe that the white plastic fork was a knife. The object Decedent was holding was a white plastic fork, with the handle protruding a few inches from the bottom of his hand, which does not have any point or edge to it and does look like a knife. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Further, it is disputed that Garcia or any officer, ever saw what was believed to be a pointy object since no one ever yelled "drop it" or "he has a weapon" or words to that effect, as officers are trained to do if a suspect is holding a sharp or pointy weapon so as to notify his fellow officers and to allow the suspect an opportunity to discard any weapon.  Especially since Garcia claims to have seen the object for 3-4 seconds continuously.  Garcia also admits to never seeing the color of steel or metal.  Some of the officers never saw a knife, or anything that looked like a knife on Decedent and the white fork does not resemble a knife.  Police officers, such as Garcia, are trained on identifying and distinguishing objects and items in people's hands and whether they are weapons or not. |
| | | Evidence: |
| | | Exhibit E |
| | | Sync'd Video |
| | | Exhibit U |
| | | Chomuk Body Cam Video at 9:00-9:30 |
| | | Exhibit O, Photo of Fork |
| | | Exhibit P, Noble Declaration at ¶ 20 |
| | | Exhibit K |
| | | Garcia Depo. at 16:12-15, 20:2 – 21:14, 39:18 – 41:9, 45:15-19, 51:4 – 52:22, 60:3-17, 66:22 – 67:12, 72:15-22, 78:7-16 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Exhibit M<br>Quintero Depo. at 36:1-10, 47:4 – 48:6, 57:14-17<br>Exhibit L<br>Chomuk Depo. at 37:18 – 38:16, 40:2-4<br>Exhibit N<br>Punzalan Depo. at 25:11-17, 39:5-7<br>Exhibit Q<br>Quintero Int. at 29:10-17, 30:11-14, 37:5-8 |
| 32. | Maccani's movements and stance were aggressive and combative, protecting his body with his left arm while approaching Officers as if preparing to strike with the other (as depicted in the photograph above, with the red circle around the object Officer Garcia observed in Maccani's hand).<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 23 | Objection, vague.<br>Disputed that Decedent was combative because he never tried to punch, kick or strike any of the officers and never verbally threatened them.<br><br>Evidence:<br>Exhibit E,<br>Sync'd Video<br>Exhibit K,<br>Garcia Depo. at 45:6-10<br>Exhibit M<br>Quintero Depo. at 41:3-10, 45:21 – 46:3<br>Exhibit L<br>Chomuk Depo. at 32:4-10<br>Exhibit N,<br>Punzalan Depo. at 28:25 – 29:10 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 33. | Maccani began yelling and rapidly and purposefully charged towards the Officers.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 24 | Disputed.  Decedent walked slowly towards the officers.<br><br>Evidence:<br>Exhibit D<br>Officer Orozco Int. at 21:1-6<br>Exhibit J<br>Jauregui Int. at 11:11-13 |
| 34. | As he closed the distance, Officer Rodriguez deployed a second less-lethal beanbag round from less than one foot away.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 24 | Undisputed. |
| 35. | The beanbag struck Maccani on his right forearm.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 24 | Undisputed. |
| 36. | This further use of less-lethal force also proved ineffective.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 24 | Officer Rodriguez, who fired the beanbag rounds, felt they were effective and may have assisted the officers to take Decedent into custody.<br><br>Evidence:<br>Exhibit R<br>Rodriguez Int. at 25:3-24, 28:2-5 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 37. | Maccani shrieked and barreled towards the officers.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 25 | Objection, vague.<br>Disputed. Decedent walked slowly towards the officers.<br><br>Evidence:<br>Exhibit D<br>Officer Orozco Int. at 21:1-6<br>Exhibit J<br>Jauregui Int. at 11:11-13 |
| 38. | As he advanced, Officer Garcia again observed Maccani gripping what appeared to be a white knife in his right hand.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 25 | Disputed that Garcia believed the object was a knife and it would an unreasonable mistake for Garcia to believe that the white plastic fork was a knife.<br>The object Decedent was holding was a white plastic fork, with the handle protruding from the bottom of his hand, which does not have any point or edge to it and does look like a knife. Further, it is disputed that Garcia or any officer, ever saw what was believed to be a pointy object since no one ever yelled "drop it" or "he has a weapon" or words to that effect, as officers are trained to do if a suspect is holding a sharp or pointy weapon so as to notify his fellow officers and to allow the suspect an opportunity to discard any weapon. Especially since Garcia claims to have seen the object for 3-4 seconds continuously. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Garcia also admits to never seeing the color of steel or metal.  The officers never saw a knife, or anything that looked like a knife on Decedent and the white fork does not resemble a knife.  Police officers, such as Garcia, are trained on identifying and distinguishing objects and items in people's hands and whether they are weapons or not.<br><br>Evidenc:<br>Exhibit E<br>Sync'd Video<br>Exhibit U<br>Chomuk Body Cam Video at 9:00-9:30<br>Exhibit O<br>Photo of Fork<br>Exhibit P<br>Noble Declaration at ¶ 20<br>Exhibit K<br>Garcia Depo. at 16:12-15, 20:2 – 21:14, 39:18 – 41:9, 45:15-19, 51:4 – 52:22, 60:3-17, 66:22 – 67:12, 72:15-22, 78:7-16<br>Exhibit M<br>Quintero Depo. at 36:1-10, 47:4 – 48:6, 57:14-17<br>Exhibit L<br>Chomuk Depo. at 37:18 – 38:16, 40:2-4 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Exhibit N<br>Punzalan Depo. at 25:11-17, 39:5-7<br>Exhibit Q<br>Quintero Int. at 29:10-17, 30:11-14, 37:5-8 |
| 39. | Maccani's eyes were wide and fixed on the Officers with an intense, unbroken stare.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 25 | Objection, calls for speculation and vague. |
| 40. | In that moment, Officer Garcia believed Maccani was preparing to use the knife against them.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 25 | Objection. Garcia's beliefs are not facts and assumes facts not in evidence.<br>Disputed that Garcia believed the object was a knife and it would an unreasonable mistake for Garcia to believe that the white plastic fork was a knife.<br>The object Decedent was holding was a white plastic fork, with the handle protruding from the bottom of his hand, which does not have any point or edge to it and does look like a knife.  Further, it is disputed that Garcia or any officer, ever saw what was believed to be a pointy object since no one ever yelled "drop it" or "he has a weapon" or words to that effect, as officers are trained to do if a suspect is holding a sharp or pointy weapon so as to notify his fellow officers and to allow the suspect an opportunity to discard any weapon. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Especially since Garcia claims to have seen the object for 3-4 seconds continuously. Garcia also admits to never seeing the color of steel or metal.  The officers never saw a knife, or anything that looked like a knife on Decedent and the white fork does not resemble a knife.  Police officers, such as Garcia, are trained on identifying and distinguishing objects and items in people's hands and whether they are weapons or not. <br><br> Evidence: <br> Exhibit E <br> Sync'd Video <br> Exhibit U <br> Chomuk Body Cam Video at 9:00-9:30 <br> Exhibit O <br> Photo of Fork <br> Exhibit P <br> Noble Declaration at ¶ 20 <br> Exhibit K <br> Garcia Depo. at 16:12-15, 20:2 – 21:14, 39:18 – 41:9, 45:15-19, 51:4 – 52:22, 60:3-17, 66:22 – 67:12, 72:15-22, 78:7-16 <br> Exhibit M <br> Quintero Depo. at 36:1-10, 47:4 – 48:6, 57:14-17 <br> Exhibit L <br> Chomuk Depo. at 37:18 – 38:16, 40:2-4 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Exhibit N<br>Punzalan Depo. at 25:11-17, 39:5-7<br>Exhibit Q<br>Quintero Int. at 29:10-17, 30:11-14, 37:5-8 |
| 41. | Maccani charged towards Officer Rodriguez, using both of his forearms to push her beanbag shotgun in a downward motion.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 26 | Disputed to the extent that Decedent slowly walked towards the officers as opposed to charged towards them.  Further disputed to the extent that Rodriguez also indicated that the barrel of her shotgun never made contact with anyone.  Further, Garcia never claims to have observed this.<br><br>Evidence:<br>Exhibit D<br>Officer Orozco Int. at 21:1-6<br>Exhibit J<br>Jauregui Int. at 11:11-13<br>Exhibit S<br>Rodriguez 2nd Int. at 10:17-20 |
| 42. | Officer Rodriguez's head and back struck the wall as Maccani pushed her, pinning her against the wall.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 26; see also Exs. A and B thereto<br>Chomuk Decl., Ex. A | Disputed that her head struck the wall or pinned her against the wall. Officer Rodriguez stated that she just recalls Decedent's hands near her abdomen/mid-section and does not even recall any physical contact. Rodriguez indicated she side stepped to the left, did not lose her balance, stepped back to create space and used her left hand to help take control of Decedent. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Rodriguez also indicated that the barrel of her shotgun never made contact with anyone.<br><br>Evidence:<br>Exhibit E<br>Sync'd Video<br>Exhibit R<br>Rodriguez Int. at 11:8-13, 44:8-11, 50:1-7<br>Exhibit S<br>Rodriguez 2nd Int. at 6:13 – 7:10, 10:17-20 |
| 43. | Officer Rodriguez immediately pulled the beanbag shotgun away, causing Maccani to collide with his back against the north hallway wall.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 27 | Objection calls for speculation. Decedent appears to push Officer Rodriguez away from him while turning clockwise and away from Rodriguez with his back up against the wall.<br><br>Exhibit E<br>Sync'd Video |
| 44. | Meanwhile, fearing for the safety of Officer Rodriguez, Officer Garcia unholstered his firearm.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 28 | Disputed to the extent that it was unreasonable for Garcia to unholster his gun based on any potential threat to Rodriguez's safety. Garcia was not assigned as the lethal cover, Garcia was assigned to the arrest team which was tasked with going hands-on and placing handcuffs on him. Further, Punzalan was going hands on with Decedent prior to the shooting and Rodriguez was using her left hand to try to control Decedent. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Both these officers going hands on with Decedent further supports that lesser use of force options were feasible, available and far more appropriate to respond to any potential threat posed by Decedent. Further, Garcia was a rookie police officer who was still in the field training and probation period and such an inexperienced officer would never have been designated as the less lethal officer.<br><br>Evidence:<br>Exhibit I<br>Punzalan Int. at 7:6 – 8:23, 9:17-22, 15:6-12, 19:12-19, 22:4-11, 30:14 – 31:17, 35:13-20, 41:14-20, 43:5 – 44:18<br>Exhibit N<br>Punzalan Depo. at 13:1 – 14:20, 24:3-23, 31:3 – 35:13, 40:19 – 43:7<br>Exhibit K<br>Garcia Depo. at 29:21 – 33:13, 44:1-18<br>Exhibit L<br>Chomuk Depo. at 33:18 – 36:14<br>Exhibit S<br>Rodriguez 2nd Int. at 6:13 – 7:25 |
| 45. | Sergeant Punzalan then grabbed Maccani's right arm just above the elbow.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 28 | Undisputed. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 46. | As Sergeant Punzalan placed his right hand on Maccani's right bicep, Officer Garcia raised his pistol and fired one round from approximately three-to-six feet away toward center mass (chest/torso area).<br><br>Evidentiary Support: Garcia Decl. ¶ 28 | Undisputed. |
| 47. | The round struck Maccani in the right upper arm and then his chest.<br><br>Evidentiary Support: Garcia Decl. ¶ 29 | Undisputed. |
| 48. | Maccani screamed loudly but remained upright.<br><br>Evidentiary Support: Garcia Decl. ¶ 29 | Disputed that he voluntarily remained upright.  Sgt. Punzalan bear-hugged Decedent and pinned him up against the wall before taking him down to the ground.<br><br>Evidence: Exhibit I Punzalan Int. at 9:17-20, 19:12-19, 35:13-20, 41:8 – 43:7 |
| 49. | Sergeant Punzalan pushed Maccani to the wall; he and Officer Garcia thereafter took Maccani to the ground and handcuffed him without further incident.<br><br>Evidentiary Support: Garcia Decl. ¶ 31 | Undisputed. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 50. | As they were handcuffing Maccani, Officer Garcia verbally confirmed to the other Officers that he had fired a lethal-force round that struck Maccani.<br><br>Evidentiary Support: Garcia Decl. ¶ 31 | Undisputed. |
| 51. | The lethal shot was fired at roughly 14:28:48 in the body-worn-camera footage.<br><br>Evidentiary Support: Garcia Decl. ¶ 31 | Undisputed. |
| 52. | Officers quickly rolled Maccani into a recovery position (on his side) and radioed dispatch to send an ambulance.<br><br>Evidentiary Support: Garcia Decl. ¶ 32 | Objection. Vague and ambiguous. Disputed that he was quickly rolled into a recovery position.<br><br>Evidence:<br>Exhibit B<br>Jauregui Body Cam at 13:00-14:00 |
| 53. | Officer Garcia heard one of his fellow officers call for the rescue ambulance at roughly 14:29:57, just over a minute after the lethal shot was fired.<br><br>Evidentiary Support: Garcia Decl. ¶ 32 | Undisputed. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 54. | Officer Garcia noticed Maccani had a chest wound after he was rolled into the recovery position and applied pressure to prevent him from bleeding out.<br><br>Evidentiary Support: Garcia Decl. ¶ 32 | Undisputed. |
| 55. | Officer Orozco checked for a pulse on Maccani's neck.<br><br>Evidentiary Support: Garcia Decl. ¶ 32 | Undisputed. |
| 56. | He ordered that chest compressions be initiated, so Officer Garcia rolled Maccani onto his back, and performed chest compressions until another Officer took over.<br><br>Evidentiary Support: Garcia Decl. ¶ 33 | Undisputed. |
| 57. | Los Angeles Fire Department personnel arrived at 14:35 hours and assumed medical care of Maccani, who was later pronounced deceased at the hospital at 15:12 hours.<br><br>Evidentiary Support: Garcia Decl. ¶ 33 | Undisputed. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 58. | After Maccani was transported and the scene was processed, it was discovered that the object he had been clenching in his fist was a plastic fork.<br><br>Evidentiary Support: Garcia Decl. ¶ 34 | Disputed that the object in Decedent's hand looked like a knife. The object in Decedent's hand was a white plastic fork, which does not resemble a knife. The white plastic fork was seen on the ground immediately after the shooting, while the officers were handcuffing the Decedent.<br><br>Evidence:<br>Exhibit M<br>Quintero Depo. at 31:10-16, 47:4 – 48:6, 57:14-17<br>Noble Declaration at ¶ 20 |
| 59. | Officer Garcia was unaware of this fact until after the shooting.<br><br>Evidentiary Support: Garcia Decl. ¶ 34 | Disputed to the extent that the object in Decedent's hand was a white plastic fork which does not look like a knife. The handle of the plastic fork was protruding from the bottom of Decedent's hand, which does not have any point or edge to it and does look like a knife. Further, it is disputed that Garcia or any officer, ever saw what was believed to be a pointy object since no one ever yelled "drop it" or "he has a weapon" or words to that effect, as officers are trained to do if a suspect is holding a sharp or pointy weapon so as to notify his fellow officers and to allow the suspect an opportunity to discard any weapon. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Garcia also admits to never seeing the color of steel or metal.  The officers never saw a knife, or anything that looked like a knife on Decedent and the white fork does not resemble a knife.  Police officers, such as Garcia, are trained on identifying and distinguishing objects and items in people's hands and whether they are weapons or not.<br><br>Evidence:<br>Exhibit E<br>Sync'd Video<br>Exhibit O<br>Photo of Fork<br>Exhibit P, Noble Declaration at ¶ 20<br>Exhibit K<br>Garcia Depo. at 16:12-15, 20:2 – 21:14, 39:18 – 41:9, 45:15-19, 51:4 – 52:22, 60:3-17, 66:22 – 67:12, 72:15-22, 78:7-16<br>Exhibit M<br>Quintero Depo. at 36:1-10, 47:4 – 48:6, 57:14-17<br>Exhibit L<br>Chomuk Depo. at 37:18 – 38:16, 40:2-4<br>Exhibit N<br>Punzalan Depo. at 25:11-17, 39:5-7<br>Exhibit Q<br>Quintero Int. at 29:10-17, 30:11-14, 37:5-8 |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 60. | Surveillance video footage that fairly and accurately depicts the events that occurred in the fourth floor hallway on February 3, 2024 is attached as **Exhibit A** to Officer Garcia's declaration. The video, which was produced as DEF2520, contains no audio component and appears somewhat distorted as it uses a wide-angle lens.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 35 (erroneously numbered 31 on page 7) | Objection.  Vague and ambiguous, also confusing and misleading. Disputed to the extent that the surveillance footage does not appear distorted.<br><br>Evidence:<br>Exhibit E<br>Sync'd Video |
| 61. | The footage from Officer Garcia's body worn camera that fairly and accurately depicts the events that occurred in the fourth floor hallway on February 3, 2024, from the viewpoint of the camera affixed to his chest is attached to his declaration as **Exhibit B**. It was produced as DEF2521.<br><br>Evidentiary Support:<br>Garcia Decl. ¶ 36 (erroneously numbered 32 on page 7) | Undisputed. |

| Defs' SSUF No. | UNCONTROVERTED FACTS | PLAINTIFFS' RESPONSES AND SUPPORTING EVIDENCE |
|---|---|---|
| 62. | The footage from Officer Chomuk's body worn camera that fairly and accurately depicts the events that occurred in the fourth floor hallway on February 3, 2024, from the viewpoint of the camera affixed to his chest is attached to his declaration as **Exhibit A**. It was produced as DEF2504.<br><br>Evidentiary Support:<br>Chomuk Decl. ¶ 4 | Undisputed. |

| | **PLAINTIFFS' ADDITIONAL MATERIAL FACTS** | |
|---|---|---|
| 63. | With regards to the initial 911 call, Garcia did not have any information that anyone had been injured or that the suspect had a gun or a knife. | Exhibit K<br>Garcia Depo. at 6:24 – 7:7; 24:19-22; |
| 64. | Upon arriving on-scene, the involved officers, including Garcia, spoke with the parties reporting ("PR") who told the officers that the suspect told them to leave, he was saying weird stuff like the world is coming to an end, that he did not hit anyone, that he was being very antsy, that he was talking non-sense, that he did not have a weapon on his person like a gun or a knife. | Exhibit B<br>Jauregui Body Cam at 8:00-10:30<br>Exhibit C<br>Punzalan Body Cam at 3:00-5:30<br>Exhibit H<br>Garcia Int. at 7:17-22, 17:6-9<br>Exhibit K<br>Garcia Depo. at 27:20-24, 46:8 – 47:2<br>Exhibit L<br>Chomuk Depo. at 15:18 - 24 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 65. | Sqt. Punzalan formulated a tactical plan that included a lethal-cover officer, a contact officer, two less lethal options (40mm and beanbag shotgun), a contact officer and the arrest team. | Exhibit I<br>Punzalan Int. at 7:6 – 8:23, 15:2-12, 22:2-11, 30:7 – 31:20, 36:5-12, 44:6-18<br>Exhibit N<br>Punzalan Depo. at 13:18 – 14:7, 32:20 – 35:18<br>Exhibit K<br>Garcia Depo. at 29:21 – 33:13 |
| 66. | Garcia was part of the arrest team which is tasked with going hands on and placing handcuffs on the suspect.  Sgt. Punzalan made sure that Garcia understood his assignment because it was important that he understood and followed the tactical plan.  Garcia understood, based on his training, that if lethal was necessary that the other officer would be designated with that responsibility. | Exhibit I<br>Punzalan Int. at 7:6 – 8:23, 15:6-19:2-11, 22:2-11, 30:7 – 31:20, 44:6-18<br>Exhibit N<br>Punzalan Depo. at 13:1 – 14:20, 32:20 – 35:6<br>Exhibit K<br>Garcia Depo. at 29:21 – 33:13 |
| 67. | Because Garcia was still in his field training and probationary period as a new officer, he would not have been assigned as the lethal option and they would want someone with more experience with that assignment. | Exhibit I<br>Punzalan Int. at 7:6 – 8:23, 15:2-12, 22:7-11, 30:14 – 31:17, 44:6-18<br>Exhibit N<br>Punzalan Depo. at 13:1 – 14:20, 32:20 – 35:6<br>Exhibit K<br>Garcia Depo. at 29:21 – 33:13 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 68. | Officers are trained on the importance of formulating tactical plans and following them and not deviating from them, including for the safety of both the suspect and the officers. Further, Garcia should have never deviated from the tactical plan and Garcia's deviation from the tactical plan was a significant factor in causing him to use deadly force against Decedent. | Exhibit P<br>Noble Declaration at ¶ 22<br>Exhibit M<br>Quintero Depo. at 22:19 – 25:6<br>Exhibit L<br>Chomuk Depo. at 19:12 – 20:12, 43:18-24 |
| 69. | The arrest team would normally be at the back of the configuration and the lethal and less lethal options would be to the front of the configuration. | Exhibit M<br>Quintero Depo. at 28:1-13 |
| 70. | Based on the information on the call, the location being in the skid row area, the information provided by the PR and police officer training, the officers believed that they may be dealing with someone experiencing a mental health crises. | Exhibit H<br>Garcia Int. at 7:20-22, 9:2-14, 63:9 – 64:5<br>Exhibit K<br>Garcia Depo. at 70:14-16<br>Exhibit I<br>Punzalan Int. at 7:22-25, 13:11-17, 28:20 – 29:19<br>Exhibit G<br>Chomuk Int. at 15:7-17, 63:18 – 64:6<br>Exhibit Q<br>Quintero Int. at 12:7-10 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| | | Exhibit M<br>Quintero Depo. at 7:14-20, 54:16 - 55:21<br>Exhibit L<br>Chomuk Depo. at 10:13-19, 22:21-23:6, 49:6 – 52:4<br>Exhibit N<br>Punzalan Depo. at 12:7-20, 30:12-15, 40:25 – 43:7<br>Exhibit P<br>Noble Declaration at ¶ 17 |
| 71. | The officers planned to arrest Decedent for misdemeanor trespass if he refused to leave the property because after discussions with the PR the officers determined that an assault or a felony had not been committed. | Exhibit K<br>Garcia Depo. at 27:21 – 29:1<br>Exhibit N<br>Punzalan Depo. at 10:11-19, 15:16 – 16:21<br>Exhibit I<br>Punzalan Int. at 30:2-17<br>Exhibit J<br>Jauregui Int. at 9:21 – 10:4 |
| 72. | The plan was to safely take Decedent into custody with the minimal amount of force possible. | Exhibit N<br>Punzalan Depo. at 16:11-21 |
| 73. | The responding officers went to the end of the hall on fourth floor and began to issue commands for the Decedent to exit out of the unit. Decedent was initially compliant with the officers' commands. | Exhibit E<br>Sync'd Video<br>Exhibit G<br>Chomuk Int. at 15:18-25, 58:18 – 59:1<br>Exhibit J<br>Jauregui Int. at 32:3-14 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 74. | The officers believed that Decedent appeared mentally ill based on his appearance and behavior. | Exhibit L<br>Chomuk Depo. at 22:13 – 23:6, 49:18 – 52:4<br>Exhibit H<br>Garcia Int. 8:13-18<br>Exhibit K<br>Garcia Depo at 70:17-20<br>Exhibit M<br>Quintero Depo. at 31:1-9 |
| 75. | During the morning roll call, there was a discussion with the involved officers regarding using less lethal when feasible rather than lethal. | Exhibit N<br>Punzalan Depo. at 35:23 – 36:14<br>Exhibit L<br>Chomuk Depo. at 45:24 – 50:1 |
| 76. | After walking backwards with his hands in the air, as the officers ordered, Decedent lowered his hands, turned around and began walking slowly towards the officers. | Exhibit D<br>Officer Orozco Int. at 21:3 – 22:3, 23:11-24:16<br>Exhibit J<br>Jauregui Int. at 11:11-15<br>Exhibit E<br>Sync'd Video |
| 77. | Decedent was holding a white plastic fork in his right hand with the handle of the fork protruding a few inches from the bottom of his hand.  The white plastic fork's handle did not have any point or sharp edge to it and does not look like a knife. | Exhibit E<br>Sync'd Video<br>Exhibit O<br>Photo of Fork<br>Exhibit P<br>Noble Declaration at ¶ 20<br>Exhibit M<br>Quintero Depo. at 31:12-16, 36:19-21, 47:23 – 48:6, 57:14-17<br>Exhibit L<br>Chomuk Depo. at 37:18 – 38:16,<br>Exhibit Q<br>Quintero Int. at 29:10-17, 30:11-14, |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 78. | This is further supported by the fact that Garcia nor any officer, ever yelled "drop it" or "he has a weapon" or words to that effect, as officers are trained to do if a suspect is holding a sharp, pointy or edged weapon so as to notify his fellow officers and to allow the suspect an opportunity to discard any weapon. | Exhibit E<br>Sync'd Video<br>Exhibit K<br>Garcia Depo. at 39:11 – 41:9, 45:15-19<br>Exhibit M<br>Quintero Depo. 37:2-7<br>Exhibit N<br>Punzalan Depo. at 25:11-17, 39:5-7 |
| 79. | Especially since Garcia claims to have seen the object for 3-4 seconds continuously and he never told anyone at the scene that he thought that Decedent had a knife. | Exhibit K<br>Garcia Depo. at 78:7-11 |
| 80. | Garcia also admits to never seeing the color of steel or metal. | Exhibit K<br>Garcia Depo. at 51:9-11 |
| 81. | Sgt. Punzalan never saw what looked like a knife on Decedent. | Exhibit N<br>Punzalan Depo. at 39:5-7 |
| 82. | The white fork does not resemble a knife. | Exhibit E<br>Sync'd Video<br>Exhibit O<br>Photo of Fork<br>Quintero Int. at 29:10-17 |
| 83. | Further, Police officers, such as Garcia, are trained on identifying and distinguishing objects and items in people's hands and whether they are weapons or not. | Exhibit K<br>Garcia Depo. at 60:3-9 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 84. | Decedent's arms and hands are down by his side as he initially slowly walks towards the officers. | Exhibit E<br>Sync'd Video |
| 85. | The officers then began to fire less lethal rounds at Decedent, including one 40mm round and one beanbag round.  The officers did not give a verbal warning before firing any of these less lethal rounds. | Exhibit E<br>Sync'd Video<br>Exhibit L<br>Chomuk Depo. at 27:10-25<br>Exhibit Q<br>Quintero Depo. at 38:5-24, |
| 86. | These less lethal rounds appear to strike the Decedent. | Exhibit L<br>Chomuk Depo. at 27:5-9, 36:2-4<br>Exhibit E<br>Sync'd Video |
| 87. | After the officers began to fire the less than lethal rounds at Decedent, he moved his arms to his abdomen and chest area, while continuing to slowly walk towards them. | Exhibit E<br>Sync'd Video<br>Exhibit D<br>Officer Orozco Int. at 23:5-13; 24:6-16<br>Exhibit J<br>Jauregui Int. at 11:20-24 |
| 88. | A second beanbag round is then fired at Decedent, which also appears to strike him. | Exhibit E<br>Sync'd Video<br>Exhibit D<br>Officer Orozco Int. at 23:17-24; 24:6-16 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 89. | The 40mm and beanbag rounds are intended for subjects displaying a lower level of resistance than an immediate or imminent threat of death or serious bodily injury, which is the standard for using deadly force. At most, the officers should have used less lethal force. | Exhibit L<br>Chomuk Depo. at 44:23 – 49:13<br>Exhibit T<br>Jauregui Depo. at 21:9 – 22:4<br>Exhibit P<br>Noble Declaration at ¶ 21 |
| 90. | The less than lethal rounds were effective and assisted with the officers taking Decedent into custody. | Exhibit R<br>Rodriguez Int. at 25:1-8, 28:2-5 |
| 91. | After the second beanbag round struck Decedent, he continued to briefly walk towards the officers and while near the wall, he pushed the officer holding the beanbag shotgun away from him with his left hand while turning clockwise away from the officer.  While this was occurring, the officer holding the beanbag shotgun side stepped to the left, she stepped back to create distance and never lost her balance. | Exhibit R<br>Rodriguez Int. at 50:1-7<br>Exhibit S<br>Rodriguez 2nd Int. at 6:16 – 7:7<br>Exhibit E<br>Sync'd Video |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 92. | Decedent made minimal physical contact with the beanbag officer and she only recalls maybe Decedent touching her around her abdomen/midsection area but does not actually recall any physical contact with Decedent.  Further, the officer does not recall Decedent making any physical contact with the barrel of her shotgun. | Exhibit R Rodriguez Int. at 11:4-13, 44:8-15 Exhibit S Rodriguez 2nd Int. at 10:17-20 |
| 93. | As Decedent spun clockwise, and away from the beanbag officer, Sgt. Punzalan saw an opportunity and he went hands on with the Decedent and grabbed his arm and torso and bear-hugged him and pushed him towards the wall. | Exhibit I Punzalan Int. at 9:17-20, 19:12-19, 35:13-15, 41:17-20, 43:5-10 Exhibit S Rodriguez 2nd Int. at 6:22 – 7:7 Exhibit N Punzalan Depo. at 24:3-17, 31:6-10, 42:21 – 43:4 Exhibit L Chomuk Depo. at 33:18 – 36:12 Exhibit E Sync'd Video |
| 94. | Officer Rodriguez (the beanbag officer) also used her left hand to help gain control of Decedent because she did not want Punzalan going hands on by himself. | Exhibit S Rodriguez 2nd Int. at 6:22 – 7:7 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 95. | Punzalan went hands on with Decedent to de-escalate the situation because was dealing with a mental health issue, which is part of police officer de-escalation training, and to avoid the need for the additional or higher uses of force (including deadly force). | Exhibit I<br>Punzalan Int. at 9:17-20, 19:12-19, 35:13-15, 41:17-20, 43:5-10<br>Exhibit S<br>Rodriguez 2nd Int. at 6:22 – 7:7<br>Exhibit N<br>Punzalan Depo. at 24:3-17, 31:6-10, 42:21 – 43:4<br>Exhibit L<br>Chomuk Depo. at 33:18 – 36:12<br>Exhibit E<br>Sync'd Video |
| 96. | While Punzalan and Rodriguez were going hands-on with the Decedent, Garcia fired a single gunshot which struck Punzalan in his hand and struck Decedent in the arm and chest. | Exhibit I<br>Punzalan Int. at 24:7-9<br>Exhibit K<br>Garcia Depo. at 61:7-21<br>Exhibit M<br>Quintero Depo. at 42:3-5<br>Exhibit L<br>Chomuk Depo. at 35:5-16<br>Exhibit E<br>Sync'd Video |
| 97. | The last beanbag round and the gunshot were fired within approximately one second of each other. | Exhibit K<br>Garcia Depo 50:21-24, 63:2-11<br>Exhibit E<br>Sync'd Video |
| 98. | Garcia did not give a verbal warning that deadly force would be used prior to firing and he did not issue any commands, including to drop it, prior to firing. | Exhibit H<br>Garcia Int. at 60:18-21<br>Exhibit K<br>Garcia Depo. at 17:9-14 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 99. | Garcia could not see Decedent's hands or the fork in his hand, at the time of the shooting. | Exhibit K<br>Garcia Depo. at 69:21-23, 75:9 – 76:7 |
| 100. | Decedent's hands were not in physical contact with any other officers or their weapons at time of shooting. | Exhibit L<br>Chomuk Depo. at 33:14-16, 36:9-11<br>Exhibit E<br>Sync'd Video |
| 101. | Garcia estimates he was six feet away from Decedent (out of arms reach) when he fired. | Exhibit K<br>Garcia Depo. at 17:15-17 |
| 102. | Decedent never held the white plastic fork above his head and he never made a stabbing or slashing motion while holding the fork. | Exhibit M<br>Quintero Depo. at 31:22 – 32:5<br>Exhibit L<br>Chomuk Depo. at 26:7-15<br>Exhibit T<br>Jauregui Depo. at 46:13-17<br>Exhibit K<br>Garcia Depo. at 75:16 – 76:3<br>Exhibit E<br>Sync'd Video |
| 103. | The hallway where the incident occurred is well lit. | Exhibit E<br>Sync'd Video<br>Exhibit K<br>Garcia Depo. at 47:17-19 |
| 104. | Garcia saw the white plastic fork on the ground and figured that must have been what Decedent had in his hands. | Exhibit K<br>Garcia Depo. at 20:12 – 21:14, 66:24 – 67:12, 72:14-21 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 105. | Decedent never grabbed or held an officer, he never tried to kick, punch or strike an officer, he never verbally threatened anyone and he did not use any profanity. | Exhibit I<br>Punzalan Int. 42:8-12<br>Exhibit N<br>Punzalan Depo. at 28:25 – 29:10, 32:14-16<br>Exhibit M<br>Quintero Depo. at 41:3-10, 45:21 – 46:3<br>Exhibit K<br>Garcia Depo. at 45:6-10<br>Exhibit E<br>Sync'd Video |
| 106. | Per the toxicology results taken at autopsy, Decedent did not have any illegal drugs in his system at the time of the incident. | Exhibit F<br>Toxicology Results |
| 107. | Garcia had several less lethal options on his person including a taser, OC spray and a baton, giving a warning that deadly force would be used and issuing commands, including to drop the knife, with sufficient time to comply with the commands. There were also several additional less lethal options like allowing the officers to continue to go hands on with Decedent, as they had already began to do prior to the shooting (especially since the officers outnumber Decedent 7-1), the 40mm gun and the beanbag shotgun. | Exhibit E<br>Sync'd Video<br>Exhibit K<br>Garcia Depo. at 18:9-13<br>Exhibit P<br>Noble Declaration at ¶ 21 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 108. | Despite already seeing another officer with his gun drawn (per the tactical plan), Garcia still unholstered his gun and fired in the direction of some of the police officers. | Exhibit H Garcia Int. at 25:21 – 26:5 |
| 109. | Due to cross-fire concerns, Chomuk yelled out "cross fire" to the other officers immediately after the gunshot. | Exhibit G Chomuk Int. at 17:23 – 18:5, 36:11 – 37:20 Exhibit L, Chomuk Depo. at 50:18 – 51:10 |
| 110. | According to the LAPD review board, by firing without a clear background/backdrop, Garcia placed the officers at greater risk of injury and/or death than the perceived threat posed by Decedent, even if he had been armed with an actual knife and not a plastic fork. | Exhibit P Noble Declaration at ¶ 19. |
| 111. | Despite all of the involved-officers having firearms on their person, only Garcia fired a lethal round. Based on their observations, most of the officers did not even unholster their guns, and the other officers with their guns drawn never put their finger on the trigger and never pointed their guns at Decedent. | Exhibit K Garcia Depo. 33:14-20, 58:13-15 Exhibit M Quintero Depo. at 39:21-23 Exhibit D Orozco Int. at 17:24 – 18:5, 24:23 – 25:5, 29:8-24 Exhibit J, Jauregui Int. at 11:1-7 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 112. | Prior to the incident, as a police officer, Punzalan has seen approximately sixty five suspects with knifes in their hands and never fired his gun during those previous encounters. | Exhibit N<br>Punzalan Depo. at 7:7 – 8:12 |
| 113. | Other than Punzalan, who was shot in the hand by Decedent, no other officers were physically injured during the incident. | Exhibit K<br>Garcia Depo. at 64:10-13<br>Exhibit N<br>Punzalan Depo. at 30:16-20 |
| 114. | Garcia had not finished his six-month field training at the time of the incident. | Exhibit K<br>Garcia Depo. at 13:21 – 14:14 |
| 115. | Garcia was fired from his job as a LAPD police officer as a result of firing his weapon during the incident. | Exhibit K<br>Garcia Depo. at 19:5-17 |
| 116. | Police officers such as Garcia, are trained that if they see a suspect with a weapon in their hand, such as a knife, to give a command to drop the weapon if feasible. | Exhibit K<br>Garcia Depo. at 16:12-22 |
| 117. | Police officers such as Garcia, are trained in the concept of situational awareness and on identifying and distinguishing objects in suspects hands in order to determine if they are weapons or not. | Exhibit K<br>Garcia Depo. at 60:3-17 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 118. | Police officers such as Garcia, are trained that there must be an immediate or imminent threat of death or serious bodily injury in order to use deadly force. | Exhibit K<br>Garcia Depo. at 76:18 – 79:8<br>Exhibit N<br>Punzalan Depo. at 7:12-15 |
| 119. | Officers are trained that deadly force is only to be used when there are no other reasonable options, it is to be used as a last resort. | Exhibit K<br>Garcia Depo. at 76:18 – 79:8<br>Exhibit N<br>Punzalan Depo. at 7:12-15<br>Exhibit P<br>Noble Declaration at ¶ 12, 13, 15 |
| 120. | They are also trained that in terms of imminent or immediate threat of death or serious bodily injury, there has to be an ability, an opportunity, and an apparent intent to immediately cause death or serious bodily injury and that all of those things must be present in order for the officer to shoot. | Exhibit K<br>Garcia Depo. at 76:18 – 79:8<br>Exhibit N<br>Punzalan Depo. at 7:12-15<br>Exhibit P<br>Noble Declaration at ¶ 12, 13 |
| 121. | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm. | Exhibit K<br>Garcia Depo. at 76:18 – 79:8<br>Exhibit N<br>Punzalan Depo. at 7:12-15<br>Exhibit P<br>Noble Declaration at ¶ 12, 13 |
| 122. | They are also trained that subjective fear is insufficient to use deadly force. | Exhibit K<br>Garcia Depo. at 77:10-12<br>Noble Declaration at ¶ 14 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 123. | Officers are trained that a verbal warning should be given when feasible. | Exhibit K<br>Garcia Depo. at 77:13-16 |
| 124. | Officers are trained that seeing a weapon in someone's hand, that fact alone is not enough to use deadly force, there has to be more. | Exhibit K<br>Garcia Depo. at 77:17-20 |
| 125. | Officers are also trained to have a reverence for human life. | Exhibit K<br>Garcia Depo. at 78:24 – 79:1 |
| 126. | Police officers such as Garcia, are trained to give commands when feasible and to give the person an opportunity to comply with the commands when feasible. | Exhibit K<br>Garcia Depo. at 77:13-78:6 |
| 127. | Police officers such as Garcia, are trained to make sure they have a clear backdrop/background before firing. | Exhibit K<br>Garcia Depo. at 78:20-23 |
| 128. | Officers are trained to control their emotions and to not panic when encountering situations similar this incident. | Exhibit P<br>Noble Declaration at ¶ 14 |
| 129. | Officer Garcia said there was nothing between him and Mr. Maccani when he fired his handgun, but the evidence shows that Sgt. Punzalan was between Officer Garcia and Mr. Maccani, that Punzalan had already grabbed Mr. Maccani and Punzalan was struck by Officer Garcia's round. | Exhibit P<br>Noble Declaration at ¶ 18 |

| PAMF No. | PLAINTIFFS' ADDITIONAL MATERIAL FACTS | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|---|
| 130. | Officer Garcia's use of deadly force was excessive, objectively unreasonable and inconsistent with generally accepted police practices. | Exhibit P<br>Noble Declaration at ¶ 20 |
| 131. | A reasonable police officer would not believe that a common plastic fork was a knife or an edged weapon. A reasonable officer would have realized that the object in Decedent's hand was not a knife or a sharp-edged weapon. | Exhibit P<br>Noble Declaration at ¶ 20 |
| 132. | Under these circumstances, Officer Garcia should never have deviated from the tactical plan and a reasonable officer under similar circumstances would not have deviated from the tactical plan. | Exhibit P<br>Noble Declaration at ¶ 22 |
| 133. | A reasonable police officer in these circumstances would not have used deadly force as Mr. Maccani did not present an imminent threat of death or serious bodily injury and a reasonable police officer in Officer Garcia's position would not have fired their handgun at Mr. Maccani when Sgt. Punzalan was in his line of fire. | Exhibit P<br>Noble Declaration at ¶ 25 |

PLAINTIFFS: OBJECTIONS TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS