**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (SBN 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA RASEY-SMITH; GORDON GENE MACCANI; and JANET MACCANI,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY OF LOS ANGELES; CALEB GARCIA ALAMILLA, and DOES 2-10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:24-cv-03265-MWC-SSC<br>[*Honorable Michelle Williams Court*]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1 TO LIMIT PLAINTIFFS' EXPERT WITNESS OMALU TESTIMONY AND TO EXCLUDE IMPROPER TESTIMONY BY NOBLE AS TO ULTIMATE FACTS [DOC. 78]**<br><br>Pre-Trial Conference<br>March 20, 2026, 1:30 p.m.<br><br>Trial<br>April 6, 2026, 8:30 a.m. |

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights and state tort lawsuit arises out of the excessive and unreasonable use of deadly force against Jason Maccani by Defendant Caleb Garcia Alamilla. Plaintiff's medical expert, Dr. Bennet Omalu, provided opinions regarding decedent's body positioning as it relates to the bullet fired by the Defendant and decedent's pain and suffering. Plaintiffs' police practices expert, Jeffrey Noble, opined that the use of lethal force was excessive and unreasonable under the circumstances, and violated basic police practices. Defendants now move to limit the testimony of both Dr. Omalu and Mr. Noble. (Doc. 78.) Plaintiffs hereby oppose Defendants' Motion.

## II. LEGAL STANDARD

The gatekeeping requirement of *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), is to ensure the reliability and relevance of expert testimony, "employ[ing] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 152 (1999). The Court must assess (1) the expert's qualification to present the opinions offered, (2) "whether the reasoning or methodology underlying the testimony is scientifically valid," and (3) "whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 591-92. When assessing an expert's qualification to present his opinions offered, courts look to the Federal Rules of Civil Procedure, Rule 702 and Federal Rules of Evidence, Rule 703. *Id.* at 592.

Rule 702 provides, in relevant part, that an expert qualified by knowledge, training or experience may testify as to opinions if (a) within the expert's specialized knowledge and helpful to the jury, (b) based on sufficient facts, (c) the product of reasonable principals and methods, and (d) reliability applies those principles and methods to this matter. Pursuant to Rule 703, an expert may base an opinion on facts in the case that the expert has been made aware of.

Although expert opinion must be reliable, a trial judge has the discretion "to

avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Kumho Tire Co., Ltd.*, 526 U.S. at 152. Defendant cannot use this standard to exclude an expert's opinions just because they disagree with the expert or the opinions are unfavorable to their position; instead, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. Defendant's "recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of [their] own expert witness." *Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001). Indeed, Defendants have retained their own expert who offer opinions in contrast to those of Dr. Omalu and Mr. Noble.

### III.   DR. OMALU'S TESTIMONY REGARDING JASON MACCANI'S BODY POSITIONING IS RELEVANT

#### A.   Dr. Omalu's Opinions Are Based on His Review of the Factual Record in This Case

Defendants first seek to exclude the opinions of Dr. Omalu related to Decedent's body positioning at the time he was shot. According to Defendants, Dr. Omalu's testimony is first inadmissible because he offers his interpretation of video evidence. (Doc. 78 at 8). However, "[a]n expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed." FRE 703 (emphasis added). Further, Dr. Omalu's opinion as to Decedent's body position is not only based on the video evidence, but also on the bullet trajectory as it relates to Decedent's body position and the position of the gun at the time of the shooting. As a world-renowned expert in forensic pathology, Dr. Omalu is beyond qualified to testify as to how the bullet trajectory relates to the Decedent's body position and the position of the gun at the time of the shooting, and his opinion is based on the forensic evidence in addition to the videos of the incident. Dr. Omalu will opine that he relied on the video evidence in forming his opinions and that the video evidence is consistent with the bullet trajectory

1  and forensic evidence. Here, Dr. Omalu reviewed the vast factual record, including the
2  involved officers' body-worn camera videos and audios and the surveillance videos.
3  (Exh. 1, Dr. Omalu's Report at 3.). Contrary to Defendants' Motion (see Mot. at 9:13-
4  16), Plaintiffs do not intend to elicit testimony from Dr. Omalu that Officer Garcia was
5  aiming at a particular spot when he shot Decedent. However, testimony regarding
6  Decedent's body positioning and the position of Sgt. Punzalan who was shot in the
7  hand by Garcia, as it relates to Defendant Garcia's firearm at the time of the shooting is
8  relevant to explain how the bullet traveled through Decedent's body and the position of
9  Decedent's body at the time of the shooting, relative to the shooting officer and other
10 officers.

    Notably, Defendants expert Parris Ward also provides his interpretation of the
body-worn footage. For example, Mr. Ward in his report noted: "Mr. Maccani
immediately grabbed the barrel of Officer Rodriguez's shotgun and pushed her against
the wall." (Exh. 2, Parris Ward's Report, at 6.). Neither side's experts should be opining
as to what is shown on the video and testimony about what is shown on the video
should be limited to what the involved officers observed during the incident.

    Further, Defendants argue that Dr. Omalu is not qualified to offer his opinions as
to bullet trajectory. However, as a board-certified forensic pathologist, the position of
fatal injuries and the mechanisms that cause them is clearly related to Dr. Omalu's
expertise. In his report, Dr. Omalu explains that "it is a generally accepted principle and
common knowledge in medicine and forensic pathology, that specific traumatic events
generate predictable, reproducible, and specific patterns of traumas and injuries." (Exh.
1 at 7.) This includes gunshot wounds. (*Id*.) Further, Dr. Omalu has previously been
found to be qualified to opine on bullet trajectory and how a bullet moves inside the
body. *See e.g., Barber v. Cnty. of San Bernardino*, 2026 WL 76305, *6 (C.D. Cal. Jan.
7, 2026) (permitting Dr. Omalu to testify on the direction in which bullets enter the
body); *Murillo v. City of Los Angeles*, 2023 WL 9240539, at * 2 (C.D. Cal. Aug. 21,
2023) ("He is qualified – and has been found qualified by other courts – to opine on the

trajectory and manner in which bullets enter and exit the body."); *Barillas v. City of Los Angeles*, 2021 WL 443977, *13 (C.D. Cal. April 12, 2021) (allowing Dr. Omalu to testify as to bullet trajectory). Further, Dr. Omalu has testified as to bullet trajectory and relative body positioning at the time of the shooting in numerous homicide cases.

For the foregoing reasons, Defendants' Motion should be denied.

### B. Dr. Omalu's Opinions Regarding "Chemical Pain" is Relevant to Damages

Defendants next argue that Dr. Omalu's opinions regarding the "chemical pain" Decedent felt before his death is inadmissible. However, Dr. Omalu's testimony is relevant and would help the jury understand the extent of the decedent's pain and suffering from the time he was shot until the time he died and is not speculative. In fact, Dr Omalu explains in his opinions in great detail, noting that "the human body continues to experience debilitating trauma-induced and physiologic chemical pain and suffering until there is a complete cessation of all bodily functions and death. The patient who suffers a disorder of consciousness *remains in a state of high human suffering especially due to biochemical pain and suffering* because of the ongoing biochemical and molecular response and systems in the body, especially in response to traumatic shock." (Exh. 1 at 16.) Dr. Omalu continues by way of example: "[T]his is one of the medical reasons why the majority of comatose patients in the intensive care unit of hospitals are on strong pain medications and narcotic analgesics like Morphine and Fentanyl although they are in a coma." (*Id.*) It is undisputed in this case that the decedent was shot at 14:28 hours and pronounced dead at 15:15 hours.

Dr. Omalu provided adequate explanation in his report as to how chemical pain is processed by the body, and that pain is experienced *until death*. Further, his opinion is based on "generally accepted principle[s] and common knowledge in medicine and forensic pathology" and patterns that "are very well established in the medical literature and have become common knowledge." (Exh. 1 at 10.) Additionally, Dr. Omalu is not only a board certified forensic pathologist, but also a board certified neuro pathologist.

Therefore, his opinions are not speculative and should not be excluded.

### C. Hypothetical Questions are Insufficient in This Case

Defendants next argue that Dr. Omalu's opinions should be established through hypothetical questioning. Unlike other experts in this case, Dr. Omalu's opinions are related to bullet trajectory and the decedent's injuries, including pain and suffering. These facts are not hypothetical. It is undisputed that Jason Maccani was shot by Defendant Garcia and that the bullet struck several major organs, including his heart. These are severe injuries that Jason Maccani sustained, which eventually led to this death. Hypotheticals are insufficient to establish Dr. Omalu's opinions to the extent of the actual injuries sustained in this matter. As such, Dr. Omalu's opinions need to be based on the facts in this case and not limited to only hypotheticals. That is not to say that some hypotheticals questions may be asked of Dr. Omalu, only that the questions should not be limited to hypotheticals exclusively.

### D. Film and Print Media Concerning Dr. Omalu are Relevant to Dr. Omalu's Qualifications

Lastly as to Dr. Omalu, Defendants argue that the several books that Dr. Omalu has authored, and the film based on his work regarding chronic traumatic encephalopathy ("CTE") are not relevant to this case. Defendants' argument must fail. Clearly, books authored by Dr. Omalu, especially those regarding forensic pathology, are relevant to establish that he is a qualified forensic pathologist. Plaintiffs do not plan on asking Dr. Omalu about his work on CTE and only plan on briefly mentioning the movie made about his work as a forensic pathologist. To the extent that Defendants contend there is a risk of undue prejudice under FRE 403, Plaintiffs do not intend to spend time on Dr. Omalu's qualifications any more than necessary to establish that he is qualified to render his opinions. However, Plaintiffs are entitled to present the jury evidence of Dr. Omalu's qualifications, and his work experience is relevant to help the jury determine his credibility and qualifications as a forensic pathologist. Thus, the Court should deny Defendants' motion as to the exclusion of film or print media

concerning Dr. Omalu.

## IV. MR. NOBLE'S TESTIMONY IS PROPER

Lastly, Defendants seek to preclude Plaintiffs' police practices expert Jeffrey Noble from rendering opinions on credibility or the ultimate issues for the jury. First off, Plaintiffs will not be asking Mr. Noble about anyone's credibility and agree that neither side's experts should be able to opine as to credibility since that is the exclusive province of the jury. Further, Plaintiffs believe that both sides police experts should be able to opine as to whether they believe the use of force was excessive and/or unreasonable. Although the federal rules of evidence allow experts to opine as to the ultimate issues, some courts allow this type of testimony, but many other courts preclude it. In the alternative, the police practices experts should be able to opine whether the use of force was improper, inappropriate, violated or is inconsistent with police officer standards and training, including POST standards. If the Court believes that it is inappropriate for the experts to offer opinions as to the reasonableness of the use of force, then that should equally apply to both sides, since defendants' police practices expert, Edward Flossi, also offers opinions that he believes the use of force was reasonable and not excessive.

"Expert testimony on police practices and the use of force has generally been found to be admissible in cases involving allegations of police misconduct." *Lopez v. Chula Vista Police Dep't*, 2010 WL 685014, *1 (S.D. Cal. Feb. 28, 2010); *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) ("Discussing whether the officers' conduct comported with law enforcement standards, the expert relied upon California's Peace Officer Standards and Training. … A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable."); *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (testimony of plaintiff's police practices expert that officers violated law enforcement standards properly

received.).

As an initial matter, Plaintiffs agree to not elicit testimony from Mr. Noble that the Board found that Defendant Garcia's use of lethal force was not objectively reasonable, proportional, or necessary, unless the door is opened by the defense. The Court should, however, reject Defendants' attempt to label Mr. Noble's opinions as legal conclusions. (Doc. 78 at 12-13). Mr. Noble is not making legal conclusions. Mr. Noble uses terms that may overlap with legal terms such as "excessive" and "objectively unreasonable," but he uses these terms as defined by generally accepted police practices.

Thus, this portion of Defendants' motion should be denied. However, should the Court find that certain opinions do stray into the territory of legal conclusions, Plaintiffs have no objection to both police practices experts refraining from giving ultimate issues or legal opinions. However, Mr. Noble should be allowed to testify as to the training and generally accepted police practices regarding the use of force and tactics, as trained to law enforcement officers, and whether any of these tactics or uses of force were inconsistent with generally accepted police practices and POST standards.

### V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion in Limine No. 1 to Limit Plaintiffs' Expert Witness Omalu Testimony and to Exclude Improper Testimony by Noble as to Ultimate Facts. (Doc. 78.)

Respectfully submitted,

DATED: March 6, 2026,        **LAW OFFICES OF DALE K. GALIPO**

*/s/ Eric Valenzuela*
Dale K. Galipo
Eric Valenzuela
*Attorneys for Plaintiffs*