LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (Bar No. 144074)
dalekgalipo@yahoo.com
Eric Valenzuela (Bar No. 284500)
evalenzuela@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA RASEY-SMITH, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 1:23−CV−01569−JLT−BAM<br><br>[*Hon. Michelle Williams Court*]<br><br>**JOINT AGREED UPON JURY INSTRUCTIONS**<br><br>Pre-Trial Conference:<br>Date:   March 20, 2026<br>Time:   1:30 p.m.<br><br>Trial:<br>Date:   April 6, 2026<br>Time:   8:30 a.m. |

PLEASE TAKE NOTICE that Plaintiffs and Defendants propose the following Joint Agreed Upon Jury Instructions for the Trial of this matter.

1  DATED:  March 9, 2026          LAW OFFICES OF DALE K. GALIPO

2

3

4                                    By:        _s/ Dale K. Galipo_

5                                          Dale K Galipo, Esq.
                                          Eric Valenzuela, Esq.
6                                          Attorneys for Plaintiffs

7

8

9  DATED: March 9, 2026          BURKE WILLIAMS & SORENSEN, LLP

10

11                                    By:        _s/ Susan E. Coleman_

12                                          Susan E. Coleman
                                          Lauren S. Dossey
13                                          Attorneys for Defendant, Caleb Garcia
                                          Alamilla
14

15  Dated: March 9, 2026          OFFICE OF THE LOS ANGELES CITY ATTORNEY

16

17                                    By: ___Ty A. Ford_____
                                          Ty Ford
18                                          _Attorneys for Defendant City of Los Angeles_

19

20

21

22

23

24

25

26

27

28

| NUMBER | TITLE | SOURCE | PAGE |
|:---:|:---:|:---:|:---:|
| | **Opening Instructions** | | |
| 1. | Claims and Defenses | 9th Cir. 1.5 | 6 |
| 2. | No Transcript Available to Jury | 9th Cir. 1.17 | 7 |
| 3. | Outline of Trial | 9th Cir. 1.21 | 8 |
| 4. | Burden of Proof – Preponderance of the Evidence | 9th Cir. 1.6 | 9 |
| 5. | What is Evidence | 9th Cir. 1.9 | 10 |
| 6. | What is Not Evidence | 9th Cir. 1.10 | 11 |
| 7. | Direct and Circumstantial Evidence | 9th Cir. 1.12 | 12 |
| 8. | Ruling on Objections | 9th Cir. 1.13 | 13 |
| 9. | Credibility of Witnesses | 9th Cir. 1.14 | 14 |
| 10. | Conduct of Jury | 9th Cir. 1.15 | 16 |
| 11. | Taking Notes | 9th Cir. 1.18 | 19 |
| 12. | Bench Conferences and Recesses | 9th Cir. 1.20 | 20 |
| 13. | Cautionary Instructions | 9th Cir. 2.1 | 21 |
| 14. | Expert Opinion | 9th Cir. 2.14 | 22 |
| 15. | Evidence in Electronic Format | 9th Cir 2.17 | 23 |

| | | Claims | |
|---|---|---|---|
| 16. | Section 1983 Claim – Introductory Instruction | 9th Cir 9.1 | 25 |
| 17. | Section 1983 Claim Against Defendant in Individual Capacity – Elements and Burden of Proof | 9th Cir 9.3 | 26 |
| 18. | Fourth Amendment – Unreasonable Seizure of Person – Excessive Force | 9th Cir 9.27 | 28 |
| 19. | Particular Rights – Fourteenth Amendment – Due Process – Interference with Familial Relationship | 9th Cir 9.32 | 31 |
| 20. | Battery by Peace Officer (Deadly Force) – Essential Factual Elements | CACI 1305B | 33 |
| 21. | Causation – Substantial Factor | CACI 430 | 36 |
| 22. | Causation – Multiple Causes | CACI 431 | 37 |
| 23. | Negligence – Essential Factual Elements | CACI 400 | 38 |
| 24. | Negligence – Standard of Care | CACI 401 | 39 |
| 25. | Negligent Use of Deadly Force by Peace Officer – Essential Factual Elements | CACI 441 | 40 |
| 26. | Vicarious Liability – Introduction | CACI 3700 | 42 |
| | | Closing Instructions | |
| 27. | Duty of Jury | 9th Cir. 1.4 | 43 |
| 28. | Duty to Deliberate | 9th Cir. 3.1 | 44 |
| 29. | Consideration of Evidence – Conduct of the Jury | 9th Cir. 3.2 | 45 |

1:23–CV–01569–JLT–BAM

JOINT AGREED UPON JURY INSTRUCTIONS
4

| 30. | Communication with Court | 9th Cir. 3.3 | 47 |
|---|---|---|---|
| 31. | Readback or Playback | 9th Cir. 3.4 | 48 |
| 32. | Return of Verdict | 9th Cir. 3.5 | 49 |

The parties reserve the right to object to the jury instructions until after the jury receives the evidence in this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 1**

**CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This case involves an officer-involved shooting that occurred inside of a building in the Skid Row area of Los Angeles on February 3, 2024. The Plaintiffs are Alexandra Rasey-Smith, who is the wife of the decedent, Jason Maccani, and Gordon Maccani and Janet Maccani, who are the parents of the decedent, Jason Maccani. The defendants are Caleb Garcia Alamilla and the City of Los Angeles.

Plaintiffs contend that the use deadly force by Caleb Garcia was excessive and unreasonable under the circumstances and that he was negligent in his use of force against the decedent. Plaintiffs are seeking monetary damages against the Defendants.

Defendants deny Plaintiffs' claims and contend that the use of deadly force by Caleb Garcia Alamilla was reasonable under the circumstances.

Source: Ninth Circuit Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.5

1:23−CV−01569−JLT−BAM

JOINT AGREED UPON JURY INSTRUCTIONS

6

# INSTRUCTION NO. 2

## NO TRANSCRIPT AVAILABLE TO JURY

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

SOURCE:     9TH CIR. MODEL INSTRUCTION, ED. 2025 1.17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 3**

**OUTLINE OF TRIAL**

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiffs will then present evidence, and counsel for the defendants may cross-examine.  Then the defendants may present evidence, and counsel for the plaintiffs may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.21

## INSTRUCTION NO. 4

### BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.6.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 5

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I have instructed you to accept as proved.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2025), 1.9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 6
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 7
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.12.

## INSTRUCTION NO. 8

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means when you are deciding the case, you must not consider the evidence for any purpose.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.13.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INSTRUCTION NO. 9
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

1
2
3
4

      The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

5
6

<u>Authority:</u> Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.14.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 10
## CONDUCT OF JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it [,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the

court immediately, by sending a note through the clerk signed by any one or more of
you.

<u>Authority</u>: Manual of Model Jury Instructions for the Ninth Circuit (2025), 1.15.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 11**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.18.

**INSTRUCTION NO. 12**

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.20.

# INSTRUCTION NO. 13

## CAUTIONARY INSTRUCTIONS

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the Internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

Source:  9th Cir. Model Instruction, ed. 2025 2.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 14
## EXPERT OPINION

You have heard testimony from Jeff Noble; Bennet Omalu, M.D.; Scott
Holdaway; Edward Flosi, and Parris Ward, who testified to opinions and the reasons
for their opinions. This opinion testimony is allowed, because of the education or
experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may
accept it or reject it, and give it as much weight as you think it deserves,
considering the witness's education and experience, the reasons given for the
opinion, and all the other evidence in the case.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2025), 2.14.

**INSTRUCTION NO. 15**

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].)  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any non juror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any non juror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2025), 2.17.

**PROPOSED INSTRUCTION NO. 16**

<u>Section 1983 Claim – Introductory Instruction</u>

The plaintiffs Alexandra Rasey Smith, Gordon Maccani, and Janet Maccani bring their claims under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

<u>Source</u>:  Ninth Circuit Manual of Model Jury Civil Instructions No.9.1 (2025)

1:23−CV−01569−JLT−BAM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED INSTRUCTION NO. 17**

<u>Section 1983 Claim Against Defendant in Individual Capacity—Elements and
Burden of Proof</u>

To prevail on a § 1983 claim against the defendant Caleb Garcia Alamilla, the plaintiffs must prove each of the following elements by a preponderance of the evidence:

First, the defendant Garcia acted under color of state law; and

Second, the acts of the defendant Garcia deprived Jason Maccani of particular rights under the United States Constitution as explained in later instructions; and

Third, the defendant Garcia's conduct was an actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that the defendant Garcia acted under color of state law.

The defendant Garcia's conduct is an actual cause of Jason Maccani injury only if the injury would not have occurred 'but for' that conduct, and the conduct has a sufficient connection to the result.

Source:  Ninth Circuit Manual of Model Jury Civil Instructions No. 9.3. (2025)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROPOSED INSTRUCTION NO. 18**

<u>Fourth Amendment—Unreasonable Seizure of Person—Excessive Force</u>

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending others. Therefore, to establish an unreasonable seizure in this case, the plaintiffs must prove by a preponderance of the evidence that the officer used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1.   The nature of the crime or other circumstances known to the officer at the time force was applied;

2.   Whether the Decedent posed an immediate threat of death or serious bodily injury to the officer or others- or of safety to the officer(s) or to others;

3.   Whether Decedent was actively resisting arrest or attempting to evade arrest by flight;

4.   the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5.    the relationship between the need for the use of force and the amount of
force used;

6.    the extent of the Decedent's injury;

7.    any effort made by the officer to temper or to limit the amount of force;

8.    the severity of the security problem at issue;

9.    the availability of alternative methods to take the Decedent into custody
or to subdue him;

10.    the number of lives at risk and the Decedent's relative culpability; i.e.,
which party created the dangerous situation, and which party is more
innocent;

11.    whether it was practical for the officer to give warning of the imminent
use of force, and whether such warning was given;

12.    whether it should have been apparent to the officer that the person he
used force against was emotionally disturbed; and

13.    whether a reasonable officer would have or should have accurately
perceived a mistaken fact.


Source:  Ninth Circuit Manual of Model Jury Civil Instructions No. 9.27 (2025)
(modified)

The parties agree to this instruction and only disagree as to whether to use the "of
death or serious bodily injury to the officer or others or of safety to the officer(s) or
to others" language.

**PER DEFENDANTS:** Defendants object to Plaintiffs' proposed modification of
Model Instruction 9.27. The Ninth Circuit Model Instruction contemplates whether
the decedent posed "an immediate threat to the safety of the officer(s) or to others."
Plaintiffs' proposed language–requiring a threat of "death or serious bodily injury"–

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

improperly departs from the model instruction and narrows the inquiry. The model instruction already addresses the relationship between the level of threat and the amount of force used in factors 5 and 7. Accordingly, Plaintiff's added language is unnecessary and risks misstating the governing standard. The Court should give Model Instruction 9.27 as written.

**PER PLAINTIFFS:** Because this is a use of deadly force cases, as opposed to a non-deadly force case, imminent or immediate threat of death or serious bodily injury is the applicable standard and therefore believe this modified language should be added.

**PROPOSED INSTRUCTION NO. 19**

PARTICULAR RIGHTS—FOURTEENTH AMENDMENT—DUE PROCESS—
INTERFERENCE WITH FAMILIAL RELATIONSHIP

A substantive due process claim of impermissible interference with familial association arises when a government official harms a parent, child or spouse in a manner that shocks the conscience.

There are two tests used to decide whether officers' conduct shocks the conscience. A state official's conduct may shock the conscience if (1) the official acted with a "purpose to harm" the victim for reasons unrelated to legitimate law enforcement objectives; or (2) the official acted with "deliberate indifference" to the victim. Which test applies turns on the specific circumstances of the underlying events in each case. If the encounter at issue escalated so quickly that the officer had to make a snap judgment, the plaintiff must show the officer acted with a "purpose to harm." However, if the situation evolved within a time frame that allowed officers to reflect before acting, the plaintiff must show the officer acted with "deliberate indifference."

Authority: Ninth Circuit Manual Of Model Civil Jury Instructions (2025), 9.32.

**PER DEFENDANTS:** Defendants object to the inclusion of Plaintiff Rasey-Smith in this claim. The Ninth Circuit has not extended the substantive due process right to the companionship and society of a child under the Fourteenth Amendment to the spousal relationship. See *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) [declining to decide the issue and observing that courts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended."] (quoting

*Washington v. Glucksberg*, 521 U.S. 702, 720.) While the Fourteenth Amendment clearly protects the parent-child relationship, it does not necessarily encompass other familial relationships. See *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991) [declining to extend due process protection to siblings]. Although some district courts in this Circuit have found the right to familial association extends to surviving spouses, other district courts within this Circuit have declined to do so because the "Ninth Circuit has refrained from creating a substantive due process right to familial association with one's spouse." *Est. of Arroyo v. Cnty. of San Diego,* No. 3:21-CV-01956-RBM-SBC, 2024 WL 4668146, at *16 (S.D. Cal. Nov. 4, 2024) (dismissing a loss of familial association claim brought by a widow).

      **PER PLAINTIFFS:** The Court has already addressed this issue in its prior motion for summary judgment ruling.

## PROPOSED INSTRUCTION NO. 20

<u>Battery by Peace Officer (Deadly Force) - Essential Factual Elements</u>

A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Caleb Garcia Alamilla unnecessarily used deadly force on Jason Maccani. To establish this claim, Plaintiffs must prove all of the following:

1. That Garcia  intentionally ==shot [or] touched== Decedent;

2. That  Garcia  used deadly force on Jason Maccani;

3. That  Garcia 's use of deadly force was not necessary to defend human life;

4. That Jason Maccani was killed; and

5. That Garcia 's use of deadly force was a substantial factor in causing Maccani's death.

Garcia 's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Garcia  at the time, that deadly force was necessary:

to defend against an imminent threat of death or serious bodily harm to Garcia himself or to others.

A peace officer must not use deadly force against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A person being arrested/detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

1:23–CV–01569–JLT–BAM

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Caleb Garcia, Jason Maccani and other persons leading up to the use of deadly force. In determining whether Garcia's use of deadly force was necessary in defense of human life, you must consider Garcia's tactical conduct and decisions before using deadly force on Jason Maccani and whether Garcia used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to do so.  You must also consider whether Garcia knew or had reason to know that the person against whom he used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officers.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other deescalation tactics.

Source:  CACI 1305B (modified).

The parties agree to this instruction and only disagree on whether to use the word "shot" or "touched".

**PER DEFENDANTS:** Defendants object to the use of the word "shot" in the proposed instruction. CACI No. 1305B, which governs the use of deadly force by a peace officer, deliberately uses the term "touched," not "shot." The instruction is intended to address the legal standard for the use of force generally, not to emphasize any particular mechanism of force. Consistent with the neutral language of the CACI instruction, the term "touched" should be used.

**PER PLAINTIFFS:** This is a shooting case and using the word "touch" is confusing and misleading. Defendant Officer Garcia did not physically touch the Decedent, he fatally shot him so Plaintiffs believe the word "shot" should be used instead of the word "touched".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 21**

**CAUSATION – SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Authority: CACI 430.

# PROPOSED INSTRUCTION NO. 22

## Causation – Multiple Causes

A person's conduct or negligence may combine with another factor to cause harm. If you find that Caleb Garcia Alamilla's conduct or negligence was a substantial factor in causing Jason Maccani's death, then Garcia is responsible for the death. Garcia cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing the death of Jason Maccani.

Source: CACI 431

The parties agree to this instruction and only disagree on whether to use the word "conduct" or "negligence".

**PER DEFENDANTS:** Defendants object to Plaintiffs' proposed insertion of the word "conduct." CACI No. 431 is specifically drafted to address causation in negligence claims, and the Judicial Council's use of the term "negligence" properly ties the causation element to the underlying theory of liability. Use of the broader term "conduct" improperly expands the instruction beyond negligence and risks confusing the jury by suggesting that any conduct, regardless of whether it is negligent, can satisfy the causation element. Because the instruction should accurately reflect the elements of a negligence claim and track the language approved by the Judicial Council, the standard CACI wording using "negligence" should be used.

**PER PLAINTIFFS:** Because Officer Garcia's conduct, in using deadly force against Decedent, we believe use of the word conduct makes more sense.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROPOSED INSTRUCTION NO. 23

<u>Negligence – Essential Factual Elements</u>

Plaintiff <mark>Alexandra Rasey-Smith, as the successor in interest to the Estate of Jason Maccani</mark>, claims that Jason Maccani was harmed by the negligence of Caleb Garcia Alamilla.  To establish this claim, Plaintiff must prove all of the following:

1.    That Garcia was negligent;

2.    That Jason Maccani was harmed; and

3.    That Garcia's negligence was a substantial factor in causing Jason Maccani's <mark>death</mark>.

<u>Source</u>:  CACI 400

[the parties agree on the majority of the language in this instruction. The only dispute is that Plaintiffs believe it should just say "Plaintiff" instead of "Plaintiff Alexandra Rasey-Smtih, as the successor in interest to the Estate of Jason Maccani"; additionally, CACI uses the word "harm" not "death".]

## PROPOSED INSTRUCTION NO. 24

<u>Negligence - Standard of Care</u>

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A police officer or person can be negligent by acting or by failing to act.  A police officer is negligent if he or she does something that a reasonably careful police officer would not do in the same situation or fails to do something that a reasonably careful police officer would do in the same situation.

You must decide how a reasonably careful police officer would have acted in Caleb Garcia Alamilla's situation.

<u>Source</u>: CACI 401 (modified to use language "police officer" rather than "person").

The parties agree to this instruction and only disagree on whether to use the word "police officer" or "person".

**PER DEFENDANTS:** Defendants object to Plaintiffs' proposed insertion of the word "police officer" instead of "person." CACI No. 401 intentionally uses the neutral term "person" to articulate the general negligence standard applicable to any actor, so that term should be used.

**PER PLAINTIFFS:** Because this is a case against a police officer, as opposed to a regular person, Plaintiffs believe the instruction should say "police officer" since the instruction will be in combination with the model negligence instructions against police officers.

## PROPOSED INSTRUCTION NO. 25

Negligent Use of Deadly Force by Peace Officer – Essential Factual Elements

A peace officer may use deadly force only when necessary in defense of human life. Plaintiff claims that Caleb Garcia Alamilla was negligent in using deadly force to arrest/detain or overcome the resistance of Jason Maccani. To establish this claim, Plaintiff Alexandra Rasey-Smith, as the successor in interest to the Estate of Jason Maccani, must prove all of the following:

1. That Garcia was a peace officer;

2. That Garcia used deadly force on Maccani;

3. That Garcia's use of deadly force was not necessary to defend human life;

4. That Maccani was harmed/killed; and

5. That Garcia's use of deadly force was a substantial factor in causing Maccani's harm/death.

Garcia's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Garcia at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Garcia or another person.

A peace officer must not use deadly force against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

"Deadly force" is force that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of Garcia and Maccani leading up to the use of deadly force. In determining whether Garcia's use of deadly force was necessary in defense of human life, you must consider Garcia's tactical conduct and decisions before using deadly force on Maccani and whether Garcia  used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

Source: CACI 441

[the parties agree on the majority of the language in this instruction. The only dispute is that Plaintiffs believe it should just say "Plaintiff" instead of "Plaintiff Alexandra Rasey-Smtih, as the successor in interest to the Estate of Jason Maccani"]

**PROPOSED INSTRUCTION NO. 26**

<u>Vicarious Liability – Introduction</u>

An employer is responsible for harm caused by the wrongful conduct of its employees while acting within the scope of their employment.

The parties have stipulated that Caleb Garcia Alamilla was acting within the scope of his employment with the <mark>City of Los Angeles or the City of Los Angeles Police Department</mark> at the time of the incident.

An employee is always responsible for harm caused by his own wrongful conduct, whether or not the employer is also liable.

<u>Source</u>: CACI 3700

The parties agree to this instruction and only disagree on whether to use the words "City of Los Angles" or "the City of Los Angeles Police Department".

## INSTRUCTION NO. 27

## DUTY OF JURY

## (COURT READS AND PROVIDES WRITTEN SET OF INSTRUCTIONS AT END OF CASE)

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

or

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Authority:

Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.4

## INSTRUCTION NO. 28
## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions (2017), 3.1

**INSTRUCTION NO. 29**

**CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media,

1  turn away and report it to me as soon as possible.

2      These rules protect each party's right to have this case decided only on

3  evidence that has been presented here in court.  Witnesses here in court take an oath

4  to tell the truth, and the accuracy of their testimony is tested through the trial

5  process.  If you do any research or investigation outside the courtroom, or gain any

6  information through improper communications, then your verdict may be

7  influenced by inaccurate, incomplete or misleading information that has not been

8  tested by the trial process.  Each of the parties is entitled to a fair trial by an

9  impartial jury, and if you decide the case based on information not presented in

10  court, you will have denied the parties a fair trial.  Remember, you have taken an

11  oath to follow the rules, and it is very important that you follow these rules.

12      A juror who violates these restrictions jeopardizes the fairness of these

13  proceedings.  If any juror is exposed to any outside information, please notify the

14  court immediately.

15

16  Authority:  Ninth Circuit Manual of Model Civil Jury Instructions (2025), 3.2.

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 30
## COMMUNICATION WITH COURT

     If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote county or otherwise, until after you have reached a unanimous verdict or have been discharged.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions (2017), 3.3.

**INSTRUCTION NO. 31**

**READBACK OR PLAYBACK**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

> Because a request has been made for a [readback] [playback] of the testimony of [witness's name] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Authority: Ninth Circuit Manual of Model Civil Jury Instructions (2017), 3.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 32
## RETURN OF VERDICT

A verdict form has been prepared for you.  [Explain verdict form as needed.] After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

Authority:  Ninth Circuit Manual of Model Civil Jury Instructions (2017), 3.5.